355 S.E.2d 371

**STATE of West Virginia**

v.

**Jimmy GOAD.**

**No. 17242.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1987.
Decided March 18, 1987.

Eric O'Briant, Logan, for appellant.

Gayle Fidler, Asst. Atty. Gen., Charleston, for appelleé.

BROTHERTON, Justice:

The petitioner, Jimmy Goad, appeals from the Circuit Court of Logan County, asserting that his conviction for nonaggravated robbery should be overturned. He claims several errors, among them that the county prosecutor violated his constitutional rights by threatening an important witness, so that the witness refused to testify. We find that there was in fact prejudicial prosecutorial misconduct, and reverse the judgment of the circuit court.

The record shows that the appellant intended to call Jimmy Dillard as an alibi witness. Dillard was in jail on an unrelated charge at the time of the trial. Two days before the appellant's trial began, the prosecutor contacted an attorney who had represented the potential witness on two unrelated charges, and asked him to advise Dillard of "the State's position" regarding Dillard's testimony in the upcoming trial. The attorney prepared a letter to Dillard, and met with him late in the afternoon on the day before the trial. The letter, the body of which is reproduced in full in the footnote,[1] conveyed a message from the prosecutor that he had two witnesses who would testify that Dillard drove the getaway car in the robbery with which the appellant was charged. It concluded:

[The prosecutor] said that he will agree not to prosecute you on that robbery charge if you will either tell the truth at trial and not provide Mr. Goad with an alibi or take the fifth amendment when questioned on the matter.

Notably, this threat/promise did not give the witness the option of telling the truth *and* providing Jimmy Goad with an alibi.

This advice on the eve of trial was followed up by a conference in the judge's chambers, where the appellant, his counsel, the prosecutor, the witness, and the lawyer who prepared the letter all were present. There, the court advised Dillard that he had the right to remain silent. The lawyer explained the fifth amendment right against self-incrimination. He also conveyed a message from the prosecutor (who was in the same room) that the agreement not to prosecute was withdrawn, and that the prosecutor would bring charges or not as he saw fit. The court then asked Dillard what he planned to do, and Dillard replied, "Take the Fifth." Fearing that an assertion of the fifth amendment privilege by an eyewitness would only damage her case, appellant's counsel did not call Dillard to the stand.

Appellant's counsel moved to dismiss the charges against her client on the basis of prosecutorial misconduct in intimidating a defense witness, or alternatively for a grant of immunity to Jimmy Dillard. The

---

1. Dear Mr. Dillard:

Prosecutor Wandling advised me by phone on August 6, 1985, that he felt that you should be advised of the State's position concerning your testimony in the upcoming Goad trial set for August 8, 1985. He called me since I represented you recently on two of your own criminal cases. I do *not* represent you as far as the Goad trial is concerned, but I am passing this information on to you for your benefit because I do not think any attorney has been appointed to assist you in that matter.

Mr. Wandling feels that you have been asked to provide an alibi for Jimmy Goad at his trial. Prosecutor Wandling wants to caution you that he has two witnesses that will place you at the scene of the robbery for which Mr. Goad is being tried. I have *not* spoken with either of these witnesses. Nevertheless, if his witnesses place you [at] the scene of the crime, it is possible that *you* will eventually be tried for the same robbery.

Mr. Wandling indicated that one witness supposedly saw you as the driver of the "getaway" vehicle. He also said that Goad's wife will testify that you admitted to her that you drove that vehicle during the robbery. Obviously, if those two individuals testify like he says they will, it could cause you serious problems.

If you were in that vehicle the State could proceed against you on a robbery charge and attempt to punish you the same way it will attempt to punish Mr. Goad at his trial. The minimum punishment is a flat ten years in prison and it could be as much as life.

Mr. Wandling said that he will agree not to prosecute you on that robbery charge if you will either tell the truth at trial and not provide Mr. Goad with an alibi or take the fifth amendment when questioned on the matter. If you take the fifth amendment, it means that you refuse to testify because anything you say might hurt you. If any of this is even remotely true, I suggest that you seriously consider taking the fifth amendment and refuse to testify. Otherwise, you may find yourself facing a robbery charge and a much stiffer term in prison than you are already facing.

court denied both motions. On appeal, Jimmy Goad urges us to overturn his conviction, because the prosecutor's actions deprived him of due process of law by driving his prime alibi witness from the stand. The prosecutor counters that he was merely seeing to it that the witness understood his rights and comprehended fully the consequences of his actions.

### I.

We have no way of knowing whether the prosecutor indeed had two witnesses prepared to implicate Dillard in the crime. Further, we have no way of knowing if the testimony offered by those witnesses would have been truthful. We do know, however, that given a free rein to "inform" potential defense witnesses of the "consequences of their testimony," an over-zealous prosecutor could wrongfully suppress a great deal of truthful evidence. If Dillard in fact could have testified truthfully regarding an alibi, the prosecutor's warnings conveyed the message that doing so would only get him into more trouble. For a man already in jail, the threat of further prosecution, even if not justified, is a potent one.

In *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the Supreme Court declared:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

The Court applied this due process right in the context of witness intimidation in *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34

L.Ed.2d 330 (1972). There, the trial judge had given a defense witness an extended admonition to refrain from lying, and threatened him with prosecution for perjury and an extended prison term. The witness then refused to testify. On appeal, the Supreme Court held that the judge's threatening remarks effectively drove the witness off the stand and deprived the defendant of due process of law. 409 U.S. at 98, 93 S.Ct. at 353.

The same principles have been held to require reversal when a prosecutor, by threats of prosecution for the same crime and for perjury, causes a witness to withhold testimony. In *United States v. Morrison*, 535 F.2d 223 (3rd Cir.1976), for example, the defendant's girlfriend was prepared to testify that she, and not the defendant, was involved in a conspiracy to sell hashish, and that the defendant's involvement in the crime was only incidental. During the trial, an assistant United States Attorney sent at least three messages to the witness, through defense counsel, that she was liable to be prosecuted on drug charges, that her testimony could be used against her, and that she could be subject to federal perjury charges. 535 F.2d at 225. He also had the witness brought to his office under an invalid subpoena, where he reiterated his "advice" in person. When called to the stand, the witness answered many of the questions asked, but refused to answer several on the ground that the answers might incriminate her, thus depriving the defendant of much of the evidence he had expected to present to the jury. *Id.* at 225–26. The United States Court of Appeals for the Third Circuit found that the repeated warnings of the prosecutor were completely unnecessary, and that a warning by the court prior to the witness's testimony would have been sufficient protection against an unknowing waiver of her right against self-incrimination.[2] The appellate court ordered a new trial, and required that the witness be granted immunity.

---

**2.** The court said further that due process requires a reversal in such a case even in the face of overwhelming evidence of guilt. 535 F.2d at 228, *citing Webb v. Texas,* 409 U.S. at 99, 93 S.Ct.

at 354 (Blackmun, J., dissenting) (defendant surprised during an armed robbery, and held at gunpoint until police arrived).

585

■ We conclude that this case, like *United States v. Morrison*, is ruled by *Webb v. Texas*. Admonitions by the prosecutor to refrain from lying, combined with threats of prosecution as an accomplice and for perjury, which result in a potential witness's assertion of his right against self-incrimination effectively deprive a criminal defendant of due process of law by denying him the opportunity to present witnesses in his own defense. If a trial court is of the opinion that a witness may not fully understand his right against self-incrimination, the court may warn the witness prior to his testimony, and may appoint counsel for the witness if necessary to fully protect his rights.

## II.

■ The appellant alleged numerous other errors, which we address only summarily. First, the defendant's estranged wife failed to appear as a witness, although she had been located in Cook County, Illinois, and ordered to appear, and was subject to a protective order from the Circuit Court of Logan County to guarantee her safety. Although a criminal defendant has a right to compulsory process, such right does not guarantee the actual attendance of witnesses, and their absence does not preclude a lawful trial. A trial judge need not grant a continuance due to absence of a material witness when there is no evidence that the witness is within the jurisdiction or can be procured at any future time. *See, e.g., State v. Mays*, 172 W.Va. 486, 307 S.E.2d 655, 659 (1983).

■ Second, the prosecutor improperly commented in closing argument on the failure of the defendant's wife to testify. This action violated W.Va.Code § 57–3–3 (1966), although it might not by itself have required reversal. *See State v. Seckman*, 124 W.Va. 740, 22 S.E.2d 374 (1942).

■ The appellant also complained that the jury verdict of *non*-aggravated robbery was not supported by the evidence, because all the relevant witnesses testified that the robber had a gun. Defense counsel noted on the record the discrepancy between the evidence and the possible verdicts presented to the jury, and nevertheless approved the instruction. Further, this Court upheld a conviction for unarmed robbery under similar circumstances in *State v. Hudson*, 157 W.Va. 939, 942–43, 206 S.E.2d 415, 418 (1974).[3]

The judgment of the Circuit Court of Logan County is reversed, and the case remanded for a new trial.

Reversed and remanded.

---

**3.** Other errors alleged are without merit, and we do not therefore take them up individually in