370 S.E.2d 120

**STATE of West Virginia**

v.

**Rusty Allen BENNETT.**

**No. 17540.**

Supreme Court of Appeals of West Virginia.

April 29, 1988.

Dissenting Opinion May 9, 1988.

---

**466**

Charles G. Brown, Atty. Gen., Charleston, for State.

Laurence W. Hancock, Hancock & Sears, Ravenswood, for Bennett.

MILLER, Justice.

The defendant was convicted in the Circuit Court of Jackson County of nighttime burglary and petit larceny for the theft of a postal money order.[1] The defendant appeals his convictions, contending the trial court erred: (1) in coercing him into not testifying at trial by informing him that he could be prosecuted for false swearing or perjury if his testimony at trial contradicted a sworn statement he made during an earlier guilty plea proceeding; (2) in re-fusing his motion for a mistrial after a police officer testified the defendant, before waiving his *Miranda* rights, had remarked that he had "been through it before"; (3) in denying a motion to suppress his confession based upon an alleged prompt presentment violation; and (4) in denying his motion to amend an instruction so as to require the State to prove the serial number of the money order stolen. Finding no merit in these contentions, we affirm.

### I.

The record reveals that the Ravenswood City Police Department commenced an investigation of a nighttime burglary that occurred in May, 1985, and soon learned that one Raymond Allen Mahan had attempted to cash a postal money order in a nearby town. He was arrested shortly thereafter and gave a statement implicating the defendant in the theft.

Subsequently, an arrest warrant was obtained for the defendant who had been working at a traveling carnival in Ravenswood. The defendant had already left the State with the carnival and was later arrested in Ohio and waived extradition. The defendant was picked up in Ohio by Ravenswood police officers on May 10, 1985, and was returned to the police station in Ravenswood. The defendant was given *Miranda*[2] warnings in Ohio and West Virginia and waived his rights. He maintained his innocence until he was confronted with the alleged accomplice, Mr. Mahan, at the police station. After this confrontation, the defendant confessed to the crimes and was indicted for nighttime burglary and petit larceny.

Mr. Mahan pled guilty to petit larceny and, pursuant to a plea agreement, agreed to testify against the defendant. Thereafter, the defendant agreed to plead guilty to a felony information charging him with conspiracy to commit a felony in violation

---

1. He was also found guilty on a recidivist charge based on one previous felony conviction and an additional five years was added to the one-to-fifteen year sentence imposed on the bur-glary conviction. No error is assigned pertaining to his recidivist conviction.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of W.Va. Code, 61–10–31. The agreement provided that the State would move to nolle the indictment upon acceptance of the plea. During the guilty plea proceeding, the defendant essentially admitted under oath his guilt to the offenses charged in the indictment. The trial court conditionally accepted, but ultimately rejected, the plea based on the presentence report and the defendant's conduct while in the county jail.

The case then went to trial. The defense presented three alibi witnesses and the defendant indicated his intent to take the stand. At this point, the judge conducted an in camera hearing. He cautioned the defendant that if he took the stand and contradicted his sworn statements made during the earlier guilty plea proceeding, he could be subject to prosecution for perjury or false swearing. The judge also explained that the decision whether to testify should be made by the defendant personally, after weighing all the circumstances. The judge concluded his remarks by saying that it was not the policy of the court to discourage anyone from testifying on his own behalf. The defendant after consulting with counsel and reviewing the guilty plea transcript decided not to take the stand.

## II.

The defendant first claims that he was denied due process of law as guaranteed by the Fifth Amendment of the United States Constitution and Article III, Section 10 of the West Virginia Constitution. This argument is premised on the fact that the trial court required the defendant in the guilty plea proceeding to testify under oath that a factual basis existed for his guilty plea. Since his statements can subsequently be utilized to prove a false swearing or perjury charge if the plea agreement is withdrawn or rejected and the defendant testifies differently at trial, the defendant argues that he was effectively prevented from testifying at trial.

Guilty pleas are governed by Rule 11 of the West Virginia Rules of Criminal Procedure, which is patterned after Rule 11 of the Federal Rules of Criminal Procedure. Rule 11(f) provides that a court should not enter a judgment upon a guilty plea "without making such inquiry as shall satisfy it that there is a factual basis for the plea." Rule 11(g), W.Va.R.Cr.P., further provides that a verbatim record of the guilty plea proceeding must be made which must include "the court's advice to the defendant, the inquiry into the voluntariness of the plea, including any plea agreement, and the inquiry into the accuracy of a guilty plea."

As the Supreme Court recognized in *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 426 (1969), one purpose of the requirement of Rule 11(f) is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *See also United States v. Oberski*, 734 F.2d 1030, 1031 (5th Cir.1984); *United States v. Johnson*, 546 F.2d 1225, 1226–27 (5th Cir.1977); *Carreon v. United States*, 578 F.2d 176 (7th Cir.1978).[3]

Rule 11(e)(6)(D)(ii) expressly recognizes that a defendant's statements under oath, in the presence of counsel and on the record during a guilty plea proceeding, can be used in a subsequent criminal proceeding for false swearing when the guilty plea is withdrawn.[4] We are not cited nor are

---

**3.** It is clear under Rule 11(f) of the Federal Rules of Criminal Procedure that the factual basis for the guilty plea may be established by such means as calling government witnesses and the use of pretrial reports without developing all the requisite inculpatory facts by addressing the defendant personally. *See, e.g., United States v. King*, 604 F.2d 411 (5th Cir. 1979). The method recommended in the ABA Standards Relating to Pleas of Guilty is to inquire of the defendant directly concerning the acts the defendant committed. 3 ABA Standards for Criminal Justice § 14–1.6 (1986).

**4.** Rule 11(e)(6), W.Va.R.Cr.P., provides as material here:

"Inadmissibility of Pleas, Plea Discussions, and Related Statements.—Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

we aware of any law that holds that the plea procedure in Rule 11(e)(6) violates due process.

The only analogous case that our research has revealed is *United States v. Gleason*, 766 F.2d 1239 (8th Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), where the defendant claimed that she had been denied the right to testify because the prosecutor had threatened to seek a perjury indictment if she testified differently from a prior sworn statement made at a plea bargain hearing. The defendant had been allowed to withdraw from the plea bargain. The court in declining to find error stated:

> "Rule 11(e)(6)(D)(ii) of the Federal Rules of Criminal Procedure specifically contemplates the use of a statement made by a defendant in a proceeding involving a guilty plea, which is later withdrawn, in a subsequent criminal proceeding for perjury. The prosecutor's 'threat' of perjury, therefore, was nothing more than a statement of intent to do that which he had an express right to do." 766 F.2d at 1245–46.[5]

The defendant's due process argument, insofar as it involves the potential for chilling trial testimony because of a future indictment for perjury or false swearing, is derived from *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). *Webb* holds that if a trial court judge becomes overzealous in threatening perjury or false swearing charges, thereby causing the defendant or a witness whose testimony is substantial not to testify, due process might be violated. *E.g., United States v. Morrison*, 535 F.2d 223 (3d Cir.1976); *Marshall v. State*, 291 Md. 205, 434 A.2d 555 (1981).

In *Webb*, the judge berated the defendant's only witness, indicating that he expected him to lie although he had not as yet testified. He threatened him with perjury and indicated that the sentence for that conviction would be "stacked" onto the witness's present sentence. The Supreme Court concluded "that the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." 409 U.S. at 98, 93 S.Ct. at 353, 34 L.Ed.2d at 333.

We have recognized *Webb*'s principle in *State v. Goad*, 177 W.Va. 582, 355 S.E.2d 371 (1987), where we reversed a conviction because the prosecutor had threatened to prosecute a defense witness if he testified as an alibi witness. As a result, the witness refused to testify, and we concluded in the single Syllabus:

> "Admonitions by the prosecutor to a potential defense witness to refrain from lying, combined with threats of prosecution as an accomplice and for perjury, which result in the witness's assertion of his right against self-incrimination effectively deprive a criminal defendant of due process of law by denying him the opportunity to present witnesses in his own defense."

In this case, we do not believe the trial court's statements can be characterized as overzealous such that the defendant was driven from the stand. Included among the court's remarks were several statements to the effect that it was not the

---

> "(A) A plea of guilty which was later withdrawn;
> "(B) A plea of nolo contendere;
> "(C) Any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or
> "(D) Any statement made in the course of plea discussions with an attorney for the state which does not result in a plea of guilty later withdrawn. However, such a statement is admissible;
> "(i) In any proceeding wherein another statement made in the course of the same plea discussions has been introduced and the statement ought in fairness to be considered contemporaneously with it; or
> "(ii) *In a criminal proceeding for false swearing if the statement was made by the defendant under oath, on the record, in the presence of counsel.*" (Emphasis added).

**5.** Commentators are in accord with this conclusion. *See* 8 Moore, Rules of Criminal Procedure 11–75 (1987); 1 F. Cleckley, Criminal Procedure I–579 (1985).

court's policy to discourage a defendant from testifying. The court also afforded the defendant an opportunity to consult with his counsel on the question of whether he should testify. Consequently, we find no due process violation.

The fact that the defendant may be asked to explain his participation in the crime under Rule 11(f) does not constitute a due process violation. The issue is more appropriately resolved under a claim that such a procedure violates the defendant's Fifth Amendment right against self-incrimination.

This particular issue does not appear to have been discussed in a Rule 11 context. Certainly, the language of Rule 11(e)(6)(D)(ii) clearly provides an immunity against the use of guilty plea testimony at a subsequent criminal trial where the plea is not entered.[6] The federal courts uniformly hold that statements made by a defendant during a guilty plea proceeding cannot be used even to impeach the defendant if he testifies at trial. In *United States v. Lawson,* 683 F.2d 688 (2d Cir.

1982), the court traced the evolution of Rule 11(e)(6) and its counterpart in Rule 410 of the Federal Rules of Evidence.[7] The primary policy reason advanced in *Lawson* for denying a right to impeach was that it would discourage plea bargains by impairing the full and frank exchange of information. The court reasoned that "to use for impeachment purposes [plea bargain statements] will clearly affect the discussions and impair the frank and open atmosphere Rule 410 and 11(e)(6) were designed to foster." 683 F.2d at 692. *See also United States v. Gleason,* 766 F.2d at 1245 n. 8; *United States v. Udeagu,* 110 F.R.D. 172 (E.D.N.Y.1986); McCormick on Evidence § 159 (3d ed. 1984).[8]

As we have previously noted, the defendant's statements made during a plea agreement proceeding may form the basis for a subsequent perjury or false swearing charge if he testifies contrary to the statements at a subsequent trial. This perjury and false swearing exception is consistent with the same exception contained in the federal immunity statute, 18 U.S.C.

---

**6.** The full text of Rule 11(e)(6)(D)(ii), W.Va. R.Cr.P., is contained in note 4, *supra.*

**7.** Rule 410 of the federal rules is identical to Rule 410 of the West Virginia Rules of Evidence, which provides:

"Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

"(1) a plea of guilty which was later withdrawn;

"(2) a plea of nolo contendere;

"(3) any statement made in the course of any proceedings under Rule 11 of the West Virginia Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or

"(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

"However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant

under oath, on the record, and in the presence of counsel."

Although not raised by the defendant, it is clear that Rule 410, W.Va.R.Evid., supplements Rule 11(e)(6)(D)(ii), W.Va.R.Cr.P., to the extent that it permits false plea bargain statements to be utilized for perjury or false swearing. The interrelationship between the crimes of perjury and false swearing is discussed in *State v. Wade,* 174 W.Va. 381, 327 S.E.2d 142 (1985).

**8.** We note that on its face Rule 11 provides immunity only where a guilty plea is *withdrawn.* We believe, however, that the language of the rule is broad enough to embrace *rejection* of guilty pleas as well. Certainly, the language of Rule 11(e)(6) is not limited to withdrawals since it covers statements made even though a plea bargain is not reached.

From a policy standpoint, if a plea is rejected, the defendant should not expect to be exculpated from false statements if he testifies at trial. As we pointed out in Syllabus Point 14 of *Myers v. Frazier,* 173 W.Va. 658, 319 S.E.2d 782 (1984), a trial court may accept a plea bargain "which is made pursuant to a plea agreement and [condition] its acceptance upon the receipt of a presentence report. After considering the presentence report, [it] may reject the plea agreement ... [but] it shall permit the defendant to withdraw his plea."

§ 6002.[9] This provision resolves the potential Fifth Amendment problem by enabling a court to force a witness to testify, and to grant immunity against criminal prosecution arising out of the compelled testimony. In *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), the United States Supreme Court had the question of whether the perjury prosecution exception in 18 U.S.C. § 6002 was constitutional. There the defendant had been called before a grand jury, but had refused to testify based on self-incrimination grounds. He was subsequently given immunity under the statute and testified before the grand jury.

Later he was indicted for having made false statements to the grand jury and, in the course of trial, these statements were used against him. The Supreme Court, in holding that such false grand jury statements could be used and were not themselves immunized by the privilege against self-incrimination, stated:

"All of the Courts of Appeals, however, have recognized that the provision in 18 USC § 6002 [18 USCS § 6002] allowing prosecutions for perjury in answering questions following a grant of immunity does not violate the Fifth Amendment privilege against compulsory self-incrimination. And we ourselves have repeatedly held that perjury prosecutions are permissible for false answers to questions following the grant of im-

munity." 455 U.S. at 261, 100 S.Ct. at 955, 63 L.Ed.2d at 260. (Citations omitted).

*See also Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).[10]

■ Consequently, we reject the defendant's implication that the perjury exception in Rule 11(e)(6)(D)(ii), W.Va.R.Cr.P., violates the Fifth Amendment privilege against self-incrimination. We have already concluded that the trial court's admonition to the defendant, that he might be indicted for perjury if he testified contrary to his plea agreement statements, did not drive the defendant from the witness stand under *Webb v. Texas*.

Based on these findings, we determine that the lower court acted properly and hold that under Rule 11(e)(6)(D)(ii), W.Va. R.Cr.P., a defendant whose plea agreement is withdrawn or rejected by a trial court may be subsequently indicted for perjury or false swearing if he testifies at trial contrary to the statements made during the plea agreement hearing.

It is apparent, however, from the plain and unambiguous language of Rule 11(e)(6)(D)(ii), W.Va.R.Cr.P., that before plea agreement statements can form the basis for a subsequent perjury or false swearing charge, they must be "made by the defendant under oath, on the record, in the presence of counsel." *See* J. Wein-

9. The federal immunity statute, 18 U.S.C. § 6002, provides:

"Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

"(1) a court or grand jury of the United States,

"(2) an agency of the United States, or

"(3) either House of Congress, a joint committee of the two Houses, or a committee or a *subcommittee of either House, and the person* presiding over the proceeding communicates to the witness an order issued under this part [18 USCS §§ 6001 et seq.], the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, *except a prosecution for perjury, giving a false*

*statement, or otherwise failing to comply with the order."* (Emphasis added).

10. The United States Supreme Court in *Nix* considered a related issue involving the Sixth Amendment right to assistance of counsel. The defense attorney in *Nix* had determined that his client intended to commit perjury and had advised his client that he would not permit this. He also indicated to the client that he would withdraw from the case if the client insisted on testifying falsely and that he might impeach the client's false testimony. The client testified truthfully and, after conviction, claimed that he had been denied effective assistance of counsel. The Supreme Court in rejecting the claim concluded that the Sixth Amendment right to effective assistance of counsel does not require an attorney to sanction his client's false testimony. *See also United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

stein, Weinstein's Evidence § 410[02] (1986).

## III.

The defendant next contends the trial court erred in denying a motion to suppress his confession. The record reflects, as indicated earlier, that West Virginia authorities obtained custody of the defendant from the Ohio authorities at around 10:00 to 10:30 a.m. on May 10, 1985. Before the defendant's release by the Ohio authorities, the Ravenswood chief of police was permitted to meet with the defendant. The defendant signed a written waiver of his *Miranda* warnings at 9:55 a.m., but denied any knowledge of the burglary offense. After the defendant's release by Ohio officials, the officers drove the defendant at his request to the carnival location in Ohio where he worked to pick up his clothes. The officers stopped on the drive back to Ravenswood for lunch. They arrived at the police station at approximately 2:50 p.m., at which time the defendant signed a second waiver of rights form.

After being confronted by an accomplice who had already confessed, the defendant agreed to make a statement. The chief of police wrote down the defendant's confession in a question and answer form and the defendant signed it at 3:10 p.m. The handwritten statement was typed and also signed by the defendant.[11] He was then taken before a magistrate.

We recently reviewed our law concerning the admissibility of a confession where there has been an unnecessary delay in taking a defendant before a magistrate in *State v. Hutcheson*, 177 W.Va. 391, 352 S.E.2d 143 (1986), and reiterated our general rule in Syllabus Point 1:

" ' "The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syllabus Point 6, *State v. Persinger*, [169 W.Va. 121], 286 S.E.2d 261 (1982), as amended.' Syllabus Point 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984)."

The defendant relies on *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), claiming that there was an unreasonable delay in transporting him from Ohio to Ravenswood, West Virginia. We believe *Guthrie* is not controlling simply because it dealt with the initial delay between the arrest of the defendant on a fugitive warrant and taking him to a magistrate. In the present case, the defendant focuses on the delay after he waived extradition in Ohio and was transported from Ohio to West Virginia.

In *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), where the prompt presentment rule was discussed in detail, we recognized that ordinarily courts do "not [count] the time consumed in transporting the defendant from where he was apprehended to the magistrate office" and that "the State can justify delay by showing the necessity of performing booking and administrative procedures as outlined in *Johnson v. State*, 282 Md. 314, 329, 384 A.2d 709, 719 (1978)." 169 W.Va. at 135, 286 S.E.2d at 270.[12]

---

**11.** The defendant does not complain about the delay in reducing the confession to writing and having him sign it. In *State v. Hutcheson*, 177 W.Va. 391, 394, 352 S.E.2d 143, 146 (1986), we concluded that the delay in reducing the confession to writing was not countable on the prompt presentment question.

**12.** In *Persinger*, 169 W.Va. at 135–36, 286 S.E.2d at 270, we quoted this portion of *Johnson*, 282 Md. at 329, 384 A.2d at 717:

"Examples of necessary delay might include those required: 1) to carry out reasonable routine administrative procedures such as recording, fingerprinting and photographing; 2) to determine whether a charging document should be issued accusing the arrestee of a crime; 3) to verify the commission of the crimes specified in the charging document; 4) to obtain information likely to be a significant aid in averting harm to persons or loss to property of substantial value; 5) to obtain relevant nontestimonial information likely to be significant in discovering the identity or location of other persons who may have been associated with the arrestee in the commission of the offense for which he was apprehended, or in preventing the loss, alteration or destruction of evidence relating to such crime." (Footnote omitted).

It appears that the prompt presentment issue has not been frequently raised in an extradition context. The Supreme Court of Pennsylvania has discussed this question in *Commonwealth v. D'Amato*, 514 Pa. 471, 526 A.2d 300 (1987), where the defendant had been arrested in Ohio and had waived extradition and been returned to Philadelphia. His transportation began at about 6:30 a.m. and he arrived in Philadelphia at approximately 2:00 p.m. After the police administered *Miranda* warnings, he confessed to three murders between 3:45 and 7:25 p.m.

The *D'Amato* court noted that the defendant had not been subject to any interrogation during the period of transportation and that he had been permitted to eat and utilize the restroom. After an extended analysis, the court concluded that the travel time from Ohio back to Pennsylvania should not be counted against the state for purposes of the prompt presentment statute:

"The Philadelphia police officers acted diligently and quite reasonably in transporting appellant to Philadelphia with appropriate dispatch, and we refuse to charge any of that transportation time against the Commonwealth in determining whether there was unnecessary delay between arrest and arraignment." 514 Pa. at 486–87, 526 A.2d at 307.

*See also Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983).

■ In the present case, *Miranda* warnings were given when the West Virginia officers obtained custody of the defendant in Ohio. No intensive interrogation occurred on the trip back, which was broken by a stop for food as well as to allow the defendant to secure his personal belongings. Upon arrival in Ravenswood, a signed waiver of his *Miranda* rights was obtained and his confession followed within one-half hour. He was taken to a magistrate shortly thereafter. Under these circumstances, we find no violation of the prompt presentment rule.

## IV.

The defendant also urges that the trial court erred in denying his motion for a mistrial based upon the admission of evidence of prior unrelated criminal activity by the defendant. On cross-examination, the chief of police for the City of Ravenswood, while describing the circumstances surrounding the defendant's arrest and subsequent execution of a standard waiver of rights form, stated that the defendant had responded to a question about whether he understood his rights by saying, "You don't have to explain it to me, I've been through it before."

The defense objected to this unresponsive remark of the chief of police, and the trial court instructed the jury to disregard it. At the conclusion of the State's case-in-chief, defense counsel moved for a mistrial on the ground that the admission of the evidence about the defendant's previous experience with police interrogation violated the rule prohibiting the introduction of collateral crime evidence. The trial court denied the motion, and stated that any error had been cured by the curative instruction to the jury to disregard the testimony.

■ We conclude the trial court properly denied the defendant's mistrial motion. Assuming for purposes of discussion that the witness's testimony was inadmissible evidence of a collateral crime, we are far from being convinced that the evidence was prejudicial, given the overall strength of the State's case. The State's evidence included the testimony of the defendant's accomplice, as well as the defendant's confession.

We were confronted with a similar situation involving a witness who blurted out an unresponsive statement in *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982), and concluded that the trial court had not erred in denying a mistrial. In reaching this conclusion, we stated in Syllabus Point 5:

" 'Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error.' Syllabus Point 7, *State v. Arnold*, [159] W.Va. [158], 219 S.E.2d

922 [ (1975) ]; Syllabus Point 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966)."

■ We recognized in *Gwinn*, 169 W.Va. at 471, 288 S.E.2d at 542, that "[t]here are extraordinary situations where the objectionable evidence is so prejudicial that an instruction to the jury to disregard it is ineffective, and a mistrial is an appropriate remedy. *See, e.g., Cannellas v. McKenzie*, 160 W.Va. 431, 236 S.E.2d 327 (1977); *see generally*, F. Cleckley, *Handbook on Evidence* § 18, at 38 (1979 Supp.)." The objectionable statement in this case, as in *Gwinn*, however, does not rise to that level. The action of the trial court in sustaining the defendant's objection and instructing the jury to disregard the statement was sufficient to protect the defendant's right to a fair trial. In *State v. Cabalceta*, 174 W.Va. 240, 324 S.E.2d 383 (1984), which likewise involved the inadvertent introduction of collateral crime evidence by State witnesses, we also concluded that the trial court properly denied the defendant's motion for a mistrial. *See also State v. Putnam*, 157 W.Va. 899, 205 S.E.2d 815 (1974).[13]

**13.** The defendant's final assignment of error is without merit. He contends the trial court erred in refusing to amend the State's petit larceny instruction so as to require the State to prove beyond a reasonable doubt that he took a postal money order bearing the specific serial number alleged in the indictment.

The jury, after being properly instructed on the elements of petit larceny, was specifically instructed that to convict the defendant of the offense the State had to prove beyond a reasonable doubt that: The defendant, in Jackson County, on the 4th day of May, 1985, did unlawfully take and carry away a United States Postal Service Money Order in the amount of $31.01, as described in the indictment; that his taking was against the will or without the consent of the named owner; that the money order had a value of less than $200, and that such taking was done with an intent to permanently deprive the owner of her property.

The jury was properly instructed on the petit larceny offense. We are aware of no authority, nor have we been referred to any, which would require the State to prove the serial number of the item allegedly stolen.

**1.** The majority relies on *United States v. Gleason*, 766 F.2d 1239 (8th Cir.1985) *cert. denied*, 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777

The judgment of the Circuit Court of Jackson County is, therefore, affirmed.

Affirmed.

NEELY, J., dissents to Part II and reserves the right to file a dissenting opinion.

NEELY, Justice, dissenting:

I respectfully dissent to Part II of the majority's opinion because I doubt that this exact situation was contemplated when Rule 11(e)(6)(D)(ii), *W.Va.R.Crim.P.* was drafted. After the defendant testified about his participation in the crime during the plea hearing, *the court* refused to accept the plea; this wrinkle distinguishes the case before us from the usual situation where *the defendant* withdraws a plea because he doesn't like the sentence or otherwise has second thoughts.[1]

Plea bargaining is a practice many have criticized and few have enthusiastically endorsed. Nonetheless plea bargaining has become an accepted fact of life as guilty pleas account for the disposition of as many as 95% of all criminal cases. *ABA Standards Relating to Pleas of Guilty*, pp. 1–2 (Approved Draft, 1968).[2] Therefore, the legal battleground has shifted

(1986) where the defendant claimed that she had been denied the right to testify because the prosecutor had threatened to seek a perjury indictment if she testified differently from a prior sworn statement made at a plea bargain hearing. However, in *Gleason* the defendant requested and was allowed to *withdraw* her plea. In our present case, the court *rescinded* the plea agreement and the defendant was *forced* to withdraw his guilty plea. Therefore, I do not find *Gleason* controlling in the present case.

**2.** In 1971, the Supreme Court encouraged the practice, albeit on grounds of necessity rather than right:

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charged were subjected to a full-scale trial, the states and the Federal Government would need to multiply by many times the number of judges and court facilities."

*Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971).

from the propriety of plea bargaining to implementation and oversight of the process. Even before the enactment of Rule 11(e)(6), *W.Va.R.Crim.P.*[3] courts held that plea-related statements are inadmissible because a defendant must be free to negotiate without fear that his statements will later be used against him. In excluding a defendant's plea-related statements, Judge Coleman wrote:

> "If, as the Supreme Court said in *Santobello,* plea bargaining is an essential component of justice and, properly administered, is to be encouraged, it is immediately apparent that no defendant or his counsel will pursue such an effort if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt. Moreover, it is inherently unfair for the government to encourage such an activity only to use it as a weapon against the defendant when negotiations fail."

*United States v. Herman,* 544 F.2d 791 (5th Cir.1977) *quoting United States v. Ross,* 493 F.2d 771, 775 (5th Cir.1974); *See also, United States v. Smith,* 525 F.2d 1017 (10th Cir.1975); *United States v. Brooks,* 536 F.2d 1137 (6th Cir.1976); *United States v. Lawson,* 683 F.2d 688 (2d Cir.1982).

Rule 11(e)(6) *W.Va.R.Crim.P.,* recognizes the existence and practice of plea bargaining and is a rule of encouragement. When the *Federal Rules of Criminal Procedure* were drafted, Rule 11 was construed to protect the defendant from unwittingly waiving his constitutional right to a trial. The requirement that there be a record also protected the sentencing judge from later constitutional challenges of the plea bargaining process by the defendant. *See,* S.Rep. No. 93–1277, 93rd Cong. 2d Sess. 2 (October 18, 1974), *see also id* at 10–11; *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7057–58. However, the rule was not designed to be a judicial sword to coerce the defendant into admitting his guilt on the record *before* the judge accepted the plea. It should not be construed as a tempting rule with built-in deception. It should not be used to seduce confessions or admissions. It is a rule of evidentiary exclusion, and it should *exclude,* lest it be destructive of the very purpose for which it was conceived.

In the case before us the defendant was led to rely to his detriment on the prosecutor's willingness to plea bargain and the court's apparent receptiveness to the proposed agreement. Although I am not sympathetic to the defendant's inclination to lie under oath at his trial, the defendant has been led to incriminate himself by promises or apparent promises of leniency.[4]

**3.** The *West Virginia Rules of Criminal Procedure* were adopted by the Supreme Court of Appeals, effective October 1, 1981 and are largely based on the Federal Rules of Criminal Procedure.

**4.** In *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973), the United States Supreme Court set forth standards for courts to determine the voluntariness of a confession by a criminal defendant. First, the court must look to see if the confession is "the product of an essentially free and unconstrained choice by its maker." The confession may not be "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976) (brackets in original), quoting *Bram v. United States,* 168 U.S. 532, 542–543, 18 S.Ct. 183, 186–187, 42 L.Ed.2d 568 (1897). This determination must be reached in light of the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." 412 U.S. at 226, 93 S.Ct. at 2047.

There are certain promises whose attraction renders a resulting confession involuntary if the promises are not kept, and the defendant's perception of what has been promised is an important factor in determining voluntariness. For example, the Fourth Circuit held in *Grades v. Boles,* 398 F.2d 409 (4th Cir.1968), that discussions possibly amounting to promises of leniency or a plea bargain must be viewed from the defendant's, and not from the prosecutor's perspective. 398 F.2d at 412. The Fourth Circuit also held that the defendant's reasonable perception that he had been promised that all charged on unrelated offenses would be dropped, a perceived promise that was not fulfilled, was the principal and determinative factor leading to his confession, which was therefore involuntary. 398 F.2d 412. In *Ferguson v. Boyd,* 566 F.2d 873 (4th Cir.1977), the court stated that repeated conversations about releasing defendant's girlfriend if defendant cooperated could reasonably have caused the de-

The primary difficulty in solving this problem is the overall artificiality of criminal procedure. Blind Justice is usually portrayed standing with an empty balance scale in her hand—a useful metaphor but not a mechanically accurate one. Indeed, Blind Justice's scale may be in rough balance, but the scale would more realistically be portrayed if it were balanced by offsetting five hundred pound weights. In this regard I am reminded of an elegant passage from Thomas Macaulay's *The History of England:*

"The science of Politics bears in one respect a close analogy to the science of Mechanics. The mathematician can easily demonstrate that a certain power, applied by means of a certain lever or of a certain system of pulleys, will suffice to raise a certain weight. But his demonstration proceeds on the supposition that the machinery is such as no load will bend or break. If the engineer, who has to lift a great mass of real granite by the instrumentality of real timber and real hemp, should absolutely rely on the propositions which he finds in treatises on Dynamics, and should make no allowance for the imperfection of his materials, his whole apparatus of beams, wheels, and ropes would soon come down in ruin, and, with all his geometrical skill, he would be found a far inferior builder to those painted barbarians who, though they never heard of the parallelogram of forces, managed to pile up Stonehenge ... It is indeed most important that legislators and administrators should be versed in the philosophy of government, as it is most important that the architect, who has to fix an obelisk on its pedestal, or to hang a tubular bridge over an estuary, should be versed in the philosophy of equilibrium and motion. But, as he who has actually to build must bear in mind many things never noticed by D'Alembert and Euler, so must he who has actually to govern to be perpetually guided by considerations to which no allusion can be found in the writings of Adam Smith or Jeremy Bentham."

The majority opinion proceeds from the proposition that the criminal justice system has consummate integrity. Thus, the majority assumes, because nobody else in the system will lie under oath, the defendant shouldn't be allowed to lie under oath either. But it hardly takes a genius to recognize that in the trial of a criminal case many participants other than the defendant may lie or otherwise behave corruptly. The police routinely exaggerate or misrepresent their evidence; other criminals testify falsely against an accused because they are coerced into aiding the prosecution by promises of leniency in their own cases; witnesses overstate the breath of their observations or the accuracy of their identifications; prosecutors corruptly seek unfounded indictments from political ambition; [5] and, finally, through pretrial publicity the media often make a fair trial impossible. This latter problem is exacerbated by live television coverage of criminal trials that encourages lawyers and judges to be showmen and places unreasonable pressure on jurors whose faces suddenly become known to millions of viewers.

The system, then, may end up giving fair results, but not for the reasons commonly discussed either in high school civics classes or law school jurisprudence classes. The system depends on the good sense of jurors and a whole set of countervailing terrors. Providing a balance of terror, in fact, is why American criminal penalties are at least twice as severe as those in other Western industrial countries. Our long sentences offset our procedural rules designed to safeguard civil liberties; long sentences encourage plea bargaining, and the defendant waives all procedural objections except the jurisdiction of the court and the voluntariness of his plea when he pleads guilty. Also, we don't have the money to provide every run-of-the mine felon with a jury trial!

Viewed in isolation, then, allowing a defendant to commit perjury with impunity appears ludicrous. But when viewed in the

fendant to believe that such a promise had been made to him. 566 F.2d at 816.

5. *See,* Thomas Wolfe, *The Bonfire of the Vanities,* Farrar, Straus, Giroux (New York: 1987).

context of all the other ludicrous aspects of our criminal justice system, the system's *internal* logic nearly demands such a result. If we want to start from scratch to build a more rational overall criminal justice system, I'm for it. But since we are simply going to tinker at the current system to keep it running more or less acceptably, then we must recognize the offsetting balance of terrors—the five hundred pound weights in Justice's balance scale pans—and make the system operate efficiently according to its own artificial, internal logic.

In light of the recent rulings of this Court that allow a judge to withhold his acceptance of a plea until after reading the presentence report, *Myers v. Frazier,* 173 W.Va. 658, 319 S.E.2d 782 (1984), I believe a court should not ask a defendant to incriminate himself under oath until the court has definitely concluded that the court will accept the plea according to the bargain. *See, State ex rel. Rogers v. Steptoe,* 177 W.Va. 6, 350 S.E.2d 7 (1986); *State v. Cabell,* 176 W.Va. 272, 342 S.E.2d 240 (1986). If, then, the defendant seeks to have the plea set aside, I have no qualms about applying the Rhadamathine provisions of Rule 11(e)(6)(D)(ii), *W.Va.R.Crim. P.*[6]

Additionally, I am concerned about a possible extension of today's holding. In criminal trials a defendant may assert his innocence until convicted, but then explain his participation in the crime to provide material in mitigation and extenuation. This is important at the sentencing stage. What happens then, however, if the case is reversed and remanded for a new trial? Can the defendant's confession at the sentencing hearing be used against him by threatening a perjury prosecution at retrial?[7] I think not; at least I think that has been the weight of authority in the United States in recent years.[8]

---

**6.** I am aware that plea bargaining involves more than the defendant's concerns. In every case, the court must determine not only that the plea is knowingly and voluntarily made, and supported by an adequate factual basis, but also that "the agreement is one which punishes the defendant for his act as well as satisfies the public interest that justice be not thwarted." *Banks v. State, supra,* in text, 466 A.2d at 76. But there are numerous ways a judge can protect this public interest if, at the time a guilty plea is tendered and a plea agreement submitted, he feels a need for further information or further reflection.

**7.** This appears so much to be the law that there are no cases on point. Our research indicates that no one has ever litigated the issue regarding the use at retrial of a defendant's confession at the time of sentencing.

**8.** As a general rule, once a judge has unconditionally accepted a guilty plea and bound the defendant to it, the judge cannot refuse to carry through the bargain that induced the plea. *United States v. Blackwell,* 694 F.2d 1325 (D.C.Cir.1982). For example, in *Banks v. State,* 56 Md.App. 38, 466 A.2d 69 (1983), the Court of Special Appeals held that because the judge unconditionally accepted defendant's guilty plea, defendant was placed in jeopardy when his plea was accepted and thus his subsequent trial, after defendant was forced to withdraw his guilty plea, violated his right not to be put twice in jeopardy.

Furthermore, jeopardy attaches when a guilty plea is accepted by a court and this bars the subsequent prosecution on charges based on the same act. *Sweetwine v. State,* 288 Md. 199, 421 A.2d 60, *cert. denied* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980); *Riadon v. United States,* 274 F.2d 304 (6th Cir.1960); *Lombrano v. Superior Court,* 124 Ariz. 525, 606 P.2d 15 (1980).