438 S.E.2d 554

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Johnnie Carlos SMITH, Defendant Below, Appellant.**

No. 21553.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Dec. 9, 1993.

Jacquelyn I. Custer, Asst. Atty. Gen., Charleston, for appellee.

G. Ernest Skaggs, Skaggs & Skaggs, Fayetteville, for appellant.

PER CURIAM:

The defendant in this proceeding, Johnnie Carlos Smith, was convicted by a jury on May 24, 1991, of possession of marijuana with intent to deliver. He was later sentenced to from one to five years in the State penitentiary and fined $1,000.00. On appeal, he claims that the trial court erred in failing to suppress evidence seized during what he contends was an illegal and warrantless search. He also claims that the court erred in admitting into evidence a prior inconsistent statement which he made to a probation officer and in allowing the prosecutor to adduce evidence of prior criminal activity on his part. He further argues that the prosecuting attorney prejudiced the jury by making improper comments during closing argument and that the court erred in failing to grant him a mistrial when a juror revealed to the court after the trial was in progress that she remembered that she had heard about the case. Lastly, he claims that the trial court erred in failing to grant a new trial because the verdict was contrary to the evidence. After reviewing the evidence adduced and the questions presented, the Court cannot conclude that the trial court erred in refusing to suppress the evidence seized during the search of the defendant's vehicle. The Court, however, does find reversible error in the admission of the prior inconsistent statement, and because of that error the defendant's conviction is reversed.

On New Year's Eve, December 31, 1989, two West Virginia State Police officers, Trooper First Class Ron C. Jones and Trooper Orville L. Ayers, II, who had previously made several arrests for possession of marijuana, were on patrol in their cruiser in Hinton, West Virginia. During the patrol, at sometime after 8:00 p.m., they observed a silver car legally parked in an area which, because of prior arrests, was known as a location for drug trafficking. The troopers pulled up behind the silver car and parked their cruiser. They then set out on foot patrol.

The window on the driver's side of the silver car was at least halfway down, and as Trooper Ayers approached the silver car, he saw the defendant, who was seated in the driver's seat, drop something into a paper bag which he then placed in a purse. The purse was then handed to a girl who was sitting in the front passenger seat. Trooper First Class Jones also noticed that the defendant had handed something to the individual in the passenger seat, but he did not see

what it was. As the troopers approached more closely, they noticed the distinctive odor of marijuana smoke emanating from the open car window. They then directed the occupants of the vehicle to get out. After they were out, Trooper Ayers obtained the purse. It contained two baggies containing 499.5 grams of marijuana. Scales, loose marijuana, and cigarette rolling papers were also discovered, and a quantity of cash was found in an envelope inside the purse. Additionally, a box of sandwich size baggies was recovered from the floor of the vehicle. At this point, the defendant and his girlfriend were placed under arrest. Two other individuals who had been in the rear of the car were allowed to leave.

According to Trooper Ayers, the event which triggered the search was the detection of the odor of burning marijuana. He later testified: "We conducted no search until after I approached the subject and observed the odor of burning marijuana." [1]

Following his arrest, the defendant was indicted for possessing marijuana with intent to deliver and for unlawfully, knowingly, and intentionally possessing marijuana in an amount in excess of fifteen grams.

In preparing for the defense of the defendant, defense counsel filed a pretrial motion to suppress all physical evidence which was seized from the vehicle. A suppression hearing was conducted, and at the suppression hearing Trooper Ayers and Trooper First Class Jones testified as to the circumstances surrounding the defendant's arrest and surrounding the seizure of physical evidence from the vehicle. At the conclusion of that hearing, the trial court denied the motion to suppress.

As development of the case proceeded, the defendant entered into plea discussions and a plea agreement with the prosecuting attorney. Pursuant to the plea arrangement, the defendant was interviewed by a probation officer, Mr. Chiles. During the interview, the defendant admitted that immediately before his arrest he had placed marijuana in the purse of his girlfriend.

After the defendant entered his plea, Bruce Barnett, a friend of the defendant, wrote a letter to the presiding judge indicating that the marijuana which gave rise to the charges against the defendant belonged to him, Barnett, and that he had placed it in the defendant's girlfriend's handbag without her knowledge and without the defendant's knowledge.

Following receipt of this letter, the defendant's plea was set aside.

Nonetheless, the prosecuting attorney proceeded with the prosecution of the defendant.

During the defendant's trial, the State introduced evidence relating to the arrest of the defendant and the seizure of contraband from the silver vehicle which he was occupying. The State also introduced the physical evidence seized in conjunction with the defendant's arrest.

After the State had presented its case, defense counsel called as a witness the defendant's girlfriend. The defendant's girlfriend testified that she had left her purse in the unlocked vehicle while she had gone to purchase some personal items. She claimed that she was not aware that there was marijuana in the purse until Trooper Ayers discovered the brown paper bag containing the two baggies of marijuana.

The defendant's friend and former roommate, Bruce Barnett, also testified as a defense witness. He claimed that he owned the marijuana which was discovered by the police officers. Barnett testified that he had asked the defendant if the defendant could put something in the girlfriend's pocketbook. The defendant told him that his girlfriend had gone to the store but left her purse in the car. Barnett testified that he then hid the marijuana, concealed in a brown popcorn bag, underneath the contents of the girlfriend's purse. He also indicated that he had previously placed the box of baggies in the car and testified that he could have placed the scales in the purse. He denied ownership of the cigarette papers.

---

1. The Court believes that it is also somewhat important to note that Trooper Ayers' testimony indicated that the window of the defendant's vehicle was down before the officers approached the vehicle.

The defendant himself also took the stand in his own defense. He testified that he did not know anything about the marijuana and further testified that Barnett had later admitted that he owned the marijuana, the baggies, and the scales.

In an attempt to impeach the defendant, the State asked the defendant if he remembered telling Mr. Chiles, the probation officer with whom the defendant had met in conjunction with the previous plea proceedings, that he had placed the marijuana in the bag. The court allowed this questioning although the court specifically directed the parties to restrain from communicating to the jury the fact that Mr. Chiles was a probation officer and the fact that the defendant had previously plead guilty.

During cross-examination, the State also asked the defendant questions about his past. Among the questions was the following: "Did you use marijuana in those days?" The defendant responded: "Back in the 80's maybe."

■ After the presentation of the evidence in the case, the prosecuting attorney proceeded to make the State's closing argument. In the course of that argument, the prosecutor made what the defendant argues was an improper and prejudicial comment to the jury about the possibility of Bruce Barnett later being indicted by a future grand jury. The defendant states that, in fact, Barnett could not be indicted by a later grand jury since double jeopardy had already attached to him. The prosecutor also indicated that the defendant would tell a future jury trying Barnett's case that the marijuana was the defendant's, in order to help Barnett obtain an acquittal. The prosecuting attorney stated:

Barnett's indicted by the next grand jury. He's put on trial. The police officers are asked all the questions; and they say, "We had Smith put the marijuana in her purse. We have never heard anything from Barnett. Mr. Smith has told different stories at different times. He told Mr. Chiles one story. He told this jury another story.

Mr. Barnett would tell us one thing, and then he would tell us another." Then Mr. Skaggs will stand in front of the jury next year or next term of court and say, "How can you convict Mr. Barnett?"

At this point defense counsel objected and the court indicated to the prosecutor that he was stepping over the line. The prosecutor continued, however:

Could this be their plan to so confuse you? Smith is acquitted. Perhaps Smith would take the stand at the next trial and say, "It was mine. Those guys were right. Shame we fooled that first jury." And then Barnett could get out too, wouldn't he?

How tricky can these people get? When breaking the law is your trade and craft— If you don't have any more respect for the truth than they've shown on the witness stand over the last day or so, why—why stop at half measure? Just go full tilt into a lie and trust that you will be so confused that you'll turn this guilty man loose.[2]

At the conclusion of the trial, the jury returned a verdict finding the defendant guilty of possession of marijuana with intent to deliver.

On appeal, the defendant's first contention is that the trial court erred in failing to suppress the evidence seized from the silver vehicle, since the defendant claims the evidence was seized as a result of an illegal and warrantless search.

In arguing this point, the defendant claims that there was no probable cause for a warrantless search such as the one in the present case. He claims that when they first saw his silver vehicle, the police officers had no reason to suspect anything was going on that was illegal.

■ As a general principle, warrantless searches are *per se* unreasonable and can only be justified if they fall within a limited number of exceptions. See *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419

---

**2.** The Court notes that the trial court properly did interrupt and instruct the jury to disregard the portion of these remarks which told the jury

what Mr. Smith might or might not do on some later occasion.

(1970); *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980); and *State v. Duvernoy,* 156 W.Va. 578, 195 S.E.2d 631 (1973).

■ In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court of the United States created the so-called automobile exception to the requirement of a search warrant. In *Carroll,* the Court held that because of the mobility of an automobile and the diminished expectation of privacy in an automobile, warrantless searches could be justified under certain conditions. A fundamental prerequisite to the application of the automobile exception was that the police have probable cause to believe that an automobile contains contraband or evidence of a crime.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court elaborated upon what would constitute probable cause for a warrantless search in the vehicle context. The Court indicated that the probable cause must be based on specific and articulable facts. The Court also indicated that a reviewing judicial body should look at the totality of the facts, taken together. It further indicated that the level of suspicion adequate to support a warrantless search was considerably less than proof of wrongdoing by a preponderance of the evidence. Later, in *United States v. Colyer,* 878 F.2d 469 (D.C.Cir.1989), it was recognized that there was probable cause if there was a fair probability that contraband would be found.

In *United States v. Stanley,* 915 F.2d 54 (1st Cir.1990), the United States Court of Appeals for the First Circuit was asked to assess the probable cause for the search of a vehicle in a situation quite similar to the one in the present case. In that case police officers observed a vehicle parked in a parking lot abutting a bar. The bar was located in a high-crime area. The sole occupant, who was later identified as a Mr. Stanley, was observed leaning toward the console of the vehicle. The officers also observed a faint light coming from the center of the console area. The police officers stopped their cruiser behind Stanley's car. They then saw him turn his head towards the rear of the car and lean towards the passenger seat. They suspected that he had seen them approaching and that he was trying to hide narcotics. They subsequently placed him under arrest, and a search of the vehicle revealed narcotics, narcotics paraphernalia, and a loaded sawed-off shotgun.

In the *Stanley* case, Mr. Stanley moved to suppress the evidence seized on the ground that there was no probable cause for the arrest or search and seizure. The District Court refused to suppress the evidence, and the Court of Appeals affirmed the District Court's decision. The Court of Appeals said:

> Location by itself is ordinarily insufficient to justify a stop; however, "officers may consider the characteristics of the area in which they encounter a vehicle." [U.S. v.] *Trullo,* 809 F.2d [108] at 111 (citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975)) ...

A second articulable factor is the conduct of defendant, considered in light of the officer's experience in law enforcement and in drug investigations in particular ... Stanley [the defendant], upon seeing Souza [one of the officers] moved as though he were hiding something under the seat. This movement served to reinforce the officers' suspicion of drug-related activity. *See United State v. Gilliard,* 847 F.2d 21, 25 (1st Cir.1988) (defendant's nervous behavior contributed to officer's legitimate concern for his safety); *United States v. Denney,* 771 F.2d 318, 322 (7th Cir.1985) (furtive movement or leaning towards right side of vehicle was reasonably interpreted by officer as reaching for a weapon) ...

Although the defendant's actions might have seemed unremarkable to other passersby, "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Bernard,* 623 F.2d 551, 560 (9th Cir.1979). Thus, the circumstances "are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Hall,* 525 F.2d 857, 859 (D.C.Cir.1976). Officer Souza had been with the Barnstable Police Department for approximately nine years, and had participated in approx-

imately twenty investigations and arrests in the Hyannis area involving narcotics and firearms violations.

*Id.* at 56.

In another somewhat similar case, *United States v. Watson,* 953 F.2d 895 (1992), the Court of Appeals for the Fifth Circuit upheld the seizure of contraband under facts somewhat similar to the those presently before this Court. In the *Watson* case, police officers, at 3:30 a.m. on April 1, 1990, were patrolling in a high crime area known especially for drug trafficking. They observed a vehicle driven by a Mr. Watson pull into a parking lot. As the vehicle drove into the lot, Watson turned off the headlights. Suspicious, the police officers made a U-turn and stopped near Watson's car. As they got out of their cruiser, one of the police officers made eye contact with Watson and observed his body in his seat as if to conceal or retrieve something on the car floor. A later search of the car produced contraband.

At trial, Watson claimed that the police officers did not have a reasonable articulable suspicion upon which to base an investigatory stop under *Terry v. Ohio, supra.* He also claimed that the Fifth Circuit's decision in *United States v. Beck,* 602 F.2d 726 (5th Cir.1979), held that reasonable suspicion was not present because two black men were sitting in a parked car in a high-crime neighborhood. In deciding against Watson, the Court of Appeals said:

> While Watson is correct in his reading of *Beck,* and though the facts of *Beck* are similar in some respects to those of this case, crucial distinctions exist. First, the investigatory stop in *Beck* took place at approximately 4:00 in the afternoon. Here, events occurred at 3:30 A.M. Further, the defendants in *Beck* were merely standing beside their car when the officers first saw them. In this case, Scheuermann and Smith [the officers] observed Watson pull his car into the parking lot of an abandoned gas station and simultaneously turn off the headlights, coming to a stop somewhat later. Finally in *Beck* the officers noticed some furtive gestures and nervous actions on the part of their suspects, but this was only after the *Terry*

stop occurred. In this case, Scheuermann, upon first making eye contact with Watson, saw him move about in his seat as if to conceal or retrieve some item. In each instance, therefore, this case presents a more suspicious set of circumstances than those in *Beck* and reasonable suspicion is thus present here where it was not in *Beck.*

*United States v. Watson, supra* at 897.

■ In West Virginia, this Court has recognized that a furtive gesture standing alone is ordinarily insufficient to constitute reasonable probable cause to search a vehicle. As stated in syllabus point 5 of *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980):

> A furtive gesture on the part of the occupant of a vehicle is ordinarily insufficient to constitute probable cause to search a vehicle if it is not coupled with other reliable causative facts to connect the gesture to the probable presence of contraband or incriminating evidence.

On the other hand, in *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983), the Court recognized that a furtive gesture coupled with other reliable causative facts to connect the gesture to probable contraband or incriminating evidence could potentially form a reliable basis for a search.

■ In the present case, the defendant was parked in a known high crime area, as was the defendant in *United States v. Stanley, supra.* As police officers approached on patrol, they noticed a furtive gesture on the part of the defendant which might reasonably have been interpreted as an effort to conceal drugs in a purse. As they approached the defendant's vehicle more closely, they detected the odor of marijuana smoke.

An examination of the facts of the present case shows that more than a furtive gesture was observed. The vehicle was parked in an area known for drug trafficking, a circumstance which under federal decisions may be considered in a probable-cause assessment. Additionally, the peculiar odor of marijuana smoke, an indicium of the presence of marijuana, was detected.

Given all the circumstances, and given the conclusions in the cases quoted, this Court

believes that the facts presented to the circuit court formed an adequate basis for the court to conclude that there was reasonable probable cause for the arrest of the defendant and the search of his vehicle.

The defendant's second contention is that the trial court erred in admitting the testimony relating to the prior inconsistent statement which the defendant had made to the probation officer.

As previously indicated the statement was made to the probation officer as the defendant was being considered for probation in conjunction with a plea bargain that he had entered into with the State of West Virginia.

Rule 11(e)(6) of the West Virginia Rules of Criminal Procedure addresses the question of when a defendant's remarks, made in conjunction with a plea proceeding, may properly be used in another judicial proceeding. That rule provides:

Inadmissibility of Pleas, Plea Discussions, and Related Statements.—Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(A) A plea of guilty which was later withdrawn;

(B) A plea of nolo contendere;

(C) Any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

(D) Any statement made in the course of plea discussions with an attorney for the state which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. However, such a statement is admissible:

(i) In any proceeding wherein another statement made in the course of the same plea discussions has been introduced and the statement ought in fairness to be considered contemporaneously with it; or

(ii) In a criminal proceeding for false swearing if the statement was made by the defendant under oath, on the record, in the presence of counsel.

■ In *State v. Bennett*, 179 W.Va. 464, 370 S.E.2d 120 (1988), this Court discussed this rule in some depth in the context of when a statement made in conjunction with a plea proceeding could be used in a perjury or false swearing proceeding. In that case, the Court recognized that West Virginia's rule was patterned on Rule 11 of the Federal Rules of Criminal Procedure. The Court also noted that:

The federal courts · uniformly hold that statements made by a defendant during a guilty plea proceeding cannot be used even to impeach the defendant if he testifies at trial. In *United States v. Lawson*, 683 F.2d 688 (2d Cir.1982), the court traced the evolution of Rule 11(e)(6) and its counterpart in Rule 410 of the Federal Rules of Evidence. The primary policy reason advanced in *Lawson* for denying a right to impeach was that it would discourage plea bargains by impairing the full and frank exchange of information. The court reasoned that "to use for impeachment purposes [plea bargain statements] will clearly affect the discussions and impair the frank and open atmosphere Rule 410 and 11(e)(6) were designed to foster." 683 F.2d at 692. *See also United States v. Gleason*, 766 F.2d [1239] at 1245 n. 8; *United States v. Udeagu*, 110 F.R.D. 172 (E.D.N.Y.1986); McCormick on Evidence § 159 (3d ed. 1984).

*State v. Bennett, Id.* 179 W.Va. at 469, 370 S.E.2d at 125.

■ It appears to this Court that the remarks made to the probation officer by the defendant in the present case were made within the ambit of his plea discussions and were made as a part of the plea process. Also, there is nothing to suggest that the defendant would have made such remarks to an officer of the court if he had not believed that he was justified in being frank because of the plea arrangements.

In this Court's view, the defendant's remarks made to the probation officer were made within portions of Rule 11 of the West Virginia Rules of Criminal Procedure dealing with a statement made in the course of a proceeding regarding a plea of guilty which was later withdrawn. Under the clear language of the rule, as well as the decision in *State v. Bennett, Id.,* this Court believes that the remarks were inadmissible and that the trial court erred in admitting them into evi-

dence. For this reason, this Court believes that the defendant's conviction must be reversed and that he must be awarded a new trial.

In addition to the foregoing errors, the defendant raises a number of other issues which probably would not recur during his new trial, and which do not thus require a lengthy discussion. The Court, however, believes that they nonetheless require some comment.

First, the defendant claims that the prosecuting attorney's remarks to the jury relating to how the defendant would testify for Mr. Barnett, if Mr. Barnett were indicted, were prejudicial and improper remarks.

In *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court discussed at some length the prosecuting attorney's role in a criminal trial. In syllabus point 3 of that case, the Court concluded:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

■ In *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), the Court discussed the prosecutorial role in commenting on the evidence adduced. In syllabus point 7, the Court said:

> A prosecutor may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

The Court also quoted with approval syllabus point 3 of *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981):

> It is improper for a prosecutor in this State to "assert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused...." ABA Code DR 7–106(C)(4) in part.

*State v. England, Id.* 180 W.Va. at 351, 376 S.E.2d at 557.

■ It appears, as previously indicated, that in the present case the prosecutor said:

> How tricky can these people get? When breaking the law is your trade and craft— If you don't have anymore respect for the truth than they've shown on the witness stand over the last day or so, why—why stop at half measure? Just go full tilt into a lie and trust that you will be so confused that you'll turn this guilty man loose. Would that be right?

These remarks did constitute an expression of personal opinion by the prosecutor as to the justness of the defendant's cause and as to the credibility of his evidence. In line with the decisions of this Court in *State v. England, Id.* and *State v. Critzer, supra*, the Court believes that they were clearly improper.

The defendant next claims that the trial court erred in admitting evidence of prior criminal activity on the part of the defendant.

■ It appears that in the cross-examination of the defendant, the following colloquy occurred:

> Q. Did you use marijuana in those days?
> A. Back in the '80's maybe.

The Court notes that the trial court properly instructed the jury to disregard this. However, the Court believes that it is important to stress that Rule 404(b) of the West Virginia Rules of Evidence generally governs the admissibility of other-crime evidence. That Rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ In considering this rule, this Court recently held that:

> Protection against unfair prejudice from evidence admitted under Rule 404(b) of the *West Virginia Rules of Evidence* [1985] is provided by: (1) the requirement of Rule 404(b) that the evidence be offered for a proper purpose; (2) the relevancy require-

ment of Rule 402—as enforced through Rule 104(b); (3) the assessment the trial court must make under Rule 403 to determine the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and, (4) Rule 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Syllabus point 8, *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992).

The defendant also claims that the trial court should have granted a new trial, since the verdict was against the weight of the evidence.

▮▮▮▮ In *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court discussed the rule to be followed in discussing the sufficiency of the evidence in a criminal case. In syllabus point 1, the Court stated:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In the present case, the State adduced evidence showing that a police officer detected the odor of burning marijuana emanating from the defendant's car in an area known to be an area of drug trafficking. Marijuana, baggies, cigarette papers, scales, and an envelope of cash were later recovered from the defendant's car. Police officers observed the defendant dropping a paper bag into a party's purse in the car.

This evidence, when viewed in the light most favorable to the prosecution, rather convincingly did create a *prima facie* case for the State and was adequate to support the jury's verdict.

Lastly, the defendant claims that the lower court erred in failing to grant his motion for mistrial when a juror revealed to the court after the trial was in progress that she already knew about the case.

At a lunch break during the first day of trial, one of the jurors, Rebecca Gill, advised the court that she had been a secretary for a law firm which had successfully defended Brenda Adkins, the defendant's girlfriend, in her separate trial stemming from the same events that lead to the prosecution of the defendant. Ms. Gill explained that at the firm she did not do any criminal work and did not realize until the defendant's trial was underway that the two cases were related. Ms. Gill further indicated that she did not do any work on Brenda Adkins' case and that at most she may have heard some casual discussions regarding the case but did not recall the details of the discussions.

After these circumstances were revealed, the trial court conducted an inquiry of Juror Gill. The court asked her whether she could afford the defendant the presumption of innocence to which he was entitled until the State could prove his guilt beyond a reasonable doubt. Juror Gill responded that she believed that she could. The court further asked her whether her connection with the law firm which had defended Brenda K. Adkins would in any way prejudice her insofar as hearing the evidence and testimony in the case. Juror Gill responded that it would not. She further indicated that she could make her decision solely on the evidence and testimony that she heard and that she did not believe that her connection with the law firm would prejudice her.

Thereafter, both parties were given an opportunity to inquire further of Ms. Gill.

At the conclusion of the proceedings, the trial court, based on Ms. Gill's responses to the questions posed, denied the defendant's motion for a mistrial. The court noted that Ms. Gill had answered the questions as a qualified juror properly from the standpoint that she could hear and try the case solely on the evidence and testimony that was presented without regard to the Brenda K. Adkins affair.

▮▮▮ A criminal defendant is, of course, entitled to trial by an impartial jury. Where there is a question as to the qualification of a juror to serve, this Court has stated:

The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court.

Syllabus point 1, *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974).

It appears that in the present case, consistent with the law of the State, as soon as the question of possible bias was brought to the trial court's attention, voir dire of the suspect juror was conducted. *See State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983), and *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978). It further appears that the juror indicated that she could fairly decide the case upon the evidence presented. Under these circumstances, this Court cannot conclude that the trial judge abused his discretion in allowing the juror to continue to serve.

For the reasons stated, the defendant's conviction is reversed, and this case is remanded for a new trial.

Reversed and remanded.