324 S.E.2d 383

**STATE of West Virginia**

v.

**Gioconda CABALCETA.**

**No. 16055.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1984.

---

Chauncey H. Browning, Atty. Gen., J. Bradley Russell, Asst. Atty. Gen., Charleston, for appellant.

Richard Paul Cohen, Fairmont, for appellee.

PER CURIAM:

Gioconda Cabalceta appeals from her conviction in the Circuit Court of Pendleton County of manufacturing marihuana.

The appellant and four others were indicted for the manufacture of marihuana on a farm owned by one of the indictees, Dan Roach, and Roach's former wife. It was alleged that the manufacturing occurred in September of 1982.

Police received a tip from a confidential informant (identified by appellant as Dan Roach's ex-wife) that marihuana was being grown on the Roach farm. Trooper Pyles travelled to an adjoining farm in order to verify the informant's story. Pyles observed what he believed to be marihuana growing in a patch on the Roach farm. He subsequently obtained a search warrant which was executed with the assistance of other state troopers, a sheriff's deputy, and conservation officers.

The officers found the appellant and Michael Hogan inside the farmhouse. The appellant told them she had just returned from jogging. Hogan voluntarily revealed the location of some marihuana (his "stash") in the house. One of the conservation officers discovered marihuana and some mushrooms in a suitcase belonging to the appellant. The mushrooms were later tested and found not to contain any controlled substance. The marihuana in appellant's suitcase was suppressed prior to trial because it was unrelated to the manufacturing charge.

One hundred thirty-five (135) growing marihuana plants were found in a patch, and 29 marihuana plants were found hanging in the barn. Also found in the barn were some stalks or branches marked with the letters "M" and "K."

Hogan testified that the "K" signified "Konda" (appellant's nickname) and that the stalks harvested by the appellant were labeled with a "K." He further testified that the appellant had participated in the harvesting and trimming of the marihuana plants.

Linda Roach testified that the appellant spells her nickname with the letter "K" and that the appellant assisted in trimming the plants.

Hogan pleaded guilty to the lesser offense of possession of a controlled substance and was placed on probation. Ms. Roach pleaded guilty to the felony of manufacturing, and at the time of appellant's trial, Ms. Roach was undergoing a 60-day pre-sentencing evaluation.

The appellant denied any involvement or participation in the manufacture of marihuana. She testified that she had been hired for the summer to babysit for the Roach children in Virginia and that Dan and Linda Roach owed her money for this work. Being unable to pay immediately, the Roaches invited the appellant to stay at the West Virginia farm for a few days until they obtained the money. She also testified that her name is spelled with a "C."

The appellant was convicted of manufacture of a Schedule I controlled substance. *W. Va. Code*, 60A–4–401(a) [1983]. She was sentenced to a term of one to five years. The sentence was suspended, and she was placed on probation for five years.

I

The appellant's first assignment of error is that the trial judge failed to properly instruct the jury on the evidence of Michael Hogan's and Linda Roach's guilty pleas.

In syllabus point 3 of *State v. Caudill*, 170 W.Va. 74, 289 S.E.2d 748 (1982), we held:

> In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving the guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

The evidence of Michael Hogan's plea of guilty to the misdemeanor of possession of marihuana, *Code*, 60A–4–401(c) [1983], and sentencing under *Code*, 60A–4–407 [1971], was elicited during cross-examination by the defense counsel. Over objection of the prosecuting attorney, Hogan was asked about the nature of his agreement to cooperate with the State in exchange for the treatment under *Code*, 60A–4–407. The judge overruled the State's objection and *sua sponte* gave the following admonition to the jury:

> [T]he jury would understand that the purpose of this impeachment type questions are proper so that you might know the full picture and be able to assess the credibility or believability of a witness. You have a right to consider that, but you would understand that these questions do not indicate the innocence or guilt of this accused person before you now. So you could consider this only for the purpose of determining the weight or credibility that you would give to the testimony of this witness....

The instruction was given in the midst of cross-examination that was obviously designed to attack the witness' credibility by showing interest in giving testimony favorable to the State.

No cautionary instruction was given with regard to Linda Roach's testimony. She was cross-examined extensively about an agreement to testify against the appellant and the recommendation by the prosecutor that she be granted probation. She did not mention pleading guilty, but she did testify that probation was denied. Ms. Roach's lawyer was called as a defense witness. He confirmed that she had pleaded guilty and was presently undergoing a pre-sentencing evaluation. Thus, there was still a possibility of being placed on probation. All of this testimony was elicited by the defense in an effort to impeach Ms. Roach's credibility.

In these circumstances, and in light of Defense Instruction C,[1] there was no error in the failure to give a *Caudill* instruction.

## II

The appellant next complains that the verdict form should have contained the lesser-included offense of possession. *W. Va. Code*, 60A–4–401(c) [1983]. The defense presented by the appellant was that she did not participate in the manufacture of marihuana. The evidence offered by the State tended to prove that she was involved in the harvesting of marihuana, which is, by definition, manufacturing. *Code*, 60A–1–101(n) [1983].

In syllabus point 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902, 909 (1982), we held: "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction."

There was no evidence to support a verdict of a lesser included offense. *See State v. Ruddle*, 170 W.Va. 669, 295 S.E.2d 909 (1982).

## III

The appellant contends that the trial court erred by failing to grant her motion for a jury view of the farm. Prior to trial, appellant filed a written motion for a view

---

1. Defendant's Instruction No. C reads as follows: "The Court instructs the jury that in addition to circumstantial evidence the State in this case is relying upon the testimony of a co-conspirator or accomplice, and that the jury should receive said testimony from the alleged co-conspirators or accomplices with great caution."

on the ground that a view would aid the jury in determining whether the appellant would have knowledge of the marihuana patch if she were in the farmhouse. The motion was repeated orally at the beginning of the trial, at which time the trial judge said he would consider the motion later. Thereafter, defense counsel did not pursue the matter.

There was no error because the motion was abandoned. Evidence of the relative locations of the marihuana patch and the farmhouse was adduced through oral testimony.

## IV

The appellant contends that evidence of a collateral crime was injected into the trial, to her substantial prejudice. During cross-examination, the officer who executed the search warrant, Trooper Pyles, testified that upon searching the house, one of the conservation officers found marihuana in the appellant's suitcase. This evidence had been disclosed prior to trial, and the court ruled *in limine* to exclude it on the ground that it was unrelated to the charge on which the appellant was being tried.

Without an objection, the trial judge summoned counsel to the bench, believing that the witness had not been informed of the *in limine* ruling and had not been responsive in answering the question, "Ok, then what happened.?"[2]

2. The following excerpted dialogue places Trooper Pyles' response in context:

Q. .... You weren't there [in the farmhouse] for very long and Mr. Hogan confessed, were you?
A. No, as soon as I read the search warrant, as far as having marijuana in the house, he made a verbal statement of it being in the house.
Q. He showed you where he had his personal stash?
A. As soon as I finished reading the search warrant, he made the statement, I believe, that the only marijuana on the place is in my personal stash and pulled the drawer open and had a few grams there in a baggie and a can.
Q. And then he showed you where the marijuana was growing?
A. No, sir, he did not.

However, the judge also believed that there was no error. Defense counsel declined the offer of a cautionary instruction, apparently not wanting to call attention to the testimony.

After Pyles and one more State's witness testified, defense counsel moved for a mistrial due to the violation of the *in limine* ruling and the inherent prejudice in testimony about an unrelated offense. The judge changed his view of the testimony and denied the motion on the ground that the question "did open the door."

The appellant argues that the trial court erred by failing to grant a mistrial. "The general rule is that the State, in a criminal case, may not introduce evidence of a substantive offense committed by the defendant which is separate and distinct from the specific offense charged in the indictment." Syl. pt. 1, *State v. Moubray*, 139 W.Va. 535, 81 S.E.2d 117 (1954).

■ The ruling *in limine* comported with the general rule on admissibility of evidence of collateral offenses. We do not believe that the evidence falls within any of the exceptions delineated in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974); *see State v. Underwood*, 168 W.Va. 52, 281 S.E.2d 491 (1981). Nor do we accept the trial court's reasoning that Trooper Pyles' response was somehow invited.

■ However, our review of the entire record convinces us that there was no prejudice to the appellant resulting from the

Q. Ok, then what happened?
A. Ok, we searched the house completely, the other officers and myself, and found a quantity of other marijuana that I did not find at this time, was found in a suitcase owned by the Defendant—
Q. Um—
A. And then after we searched the house, we proceeded to other buildings on the farm, the other officers did, and we found a quantity of marijuana being dried, as I stated, in a barn, and from there, we went on up the hollow where the patch was being cultivated and confiscated marijuana that was growing in the patch.
Q. I see.
BY THE COURT: Does counsel wish to approach the bench?
MR. GARRETT: Yes, Your Honor, I think it probably would be a good idea.

single reference to marihuana being discovered in her suitcase, *see State v. Atkins*, 163 W.Va. 502, 514, 261 S.E.2d 55, 62 (1979), *cert den.* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), particularly in light of the decision by defense counsel not to give a cautionary instruction. Furthermore, there was considerable delay in moving for a mistrial.

## V

The appellant next contends that she was denied a fair trial through the misconduct of the prosecutor who made inflammatory remarks, misstated the evidence, and asked questions all designed to characterize the appellant as the subject of a large and continuing investigation into drug-related crimes.

■ During the trial, the prosecutor posed the following question to Michael Hogan: "Did I subsequently tell you you independently verified other information?" A general objection was sustained, and the jury was instructed to disregard the question.

■ Another instance of alleged inflammatory conduct occurred during closing argument, when the prosecuting attorney tried to vouch for the credibility of Michael Hogan and Linda Roach. Objection was made on the ground that the prosecutor was stating a personal opinion. The judge immediately instructed the jury to decide the case on the evidence and the law, not the prosecutor's opinion.[3]

We do not find any reversible error in the conduct of the prosecuting attorney. *See State v. Boyd*, 160 W.Va. 234, 242–3, 233 S.E.2d 710, 717 (1977); *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879, 890–91 (1982).

## VI

The appellant complains that she was prejudiced by the ineffective assistance of counsel. Her complaint is based on the following specific allegations: (1) At the outset of the trial, she was displeased with her appointed counsel, but was denied the

opportunity to clearly communicate her displeasure and lack of confidence to the court; (2) consultations between counsel and appellant were too infrequent and too brief to ensure adequate preparation for trial; (3) counsel agreed to stipulate that marihuana was found on the farm; and (4) counsel allowed numerous errors to be committed, including appellant's absence at a pretrial disposition, denial of a jury view, testimony by Trooper Pyles about quality of the marihuana, failure to request a *Caudill* instruction, and failure to adequately challenge the prosecuting attorney's inflammatory arguments.

We find no merit in these contentions. The record reveals that there was adequate preparation time, and, indeed, counsel was well prepared for trial. This case essentially revolved around witness credibility. Defense counsel vigorously challenged the veracity of the State's principal witnesses, Hogan and Roach, by exposing their plea agreements and their interest in giving testimony favorable to the State. He also challenged contradictions and other weaknesses in their testimony.

■ In syllabus points 19 and 21 of our leading case on ineffective assistance of counsel, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), we held:

19. In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

21. Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and

---

**3.** Other alleged misconduct, to which there was no objection, will not be considered. *See State*

*v. Burton*, 163 W.Va. 40, 58, 254 S.E.2d 129, 140 (1979).

arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

 Most of the alleged trial errors have already been discussed, *supra*, and have been found not to have been prejudicial to the appellant. Strategic decisions, related to the jury view and stipulation, were not unreasonable, under the circumstances. Our assessment of defense counsel's overall performance is that he was adequately prepared, that he creditably and competently represented his client, and that he, therefore, effectively assisted the appellant.

## VII

The appellant's final assignment of error is that the State failed to carry its burden of proof and that the evidence is insufficient to sustain the conviction.

Our standard for evaluating sufficiency of evidence in a criminal case is found in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In this case, the testimony of Hogan, Roach and Pyles, if believed, together with the stipulation that marihuana was growing on the farm, is sufficient to support a conviction.

While there may have been contradictory testimony, we view the evidence in the light most favorable to the State "because the jury's verdict of guilty is taken to have resolved factual conflicts in favor of the State in recognition of the jury's role in evaluating the credibility of the witnesses." *State v. Atkins, supra* 163 W.Va. at 515, 261 S.E.2d at 62–3. As we said in our discussion of the effectiveness of counsel claim, the central element in the trial was witness credibility.

Because we find no error or prejudice in the appellant's claims made in this appeal, there is no need to look for cumulative error.[4]

The conviction is therefore affirmed.

Affirmed.

---

4. We do not decide whether a pretrial deposition of a potential prosecution witness is a critical stage requiring the presence of the accused. We find no harm where the State made no use of Michael Hogan's deposition, and where the appellant derived a benefit by using the deposition to impeach Hogan. Counsel was not ineffective in allowing the deposition to proceed in the absence of his client.