678 S.E.2d 33

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Joseph Fritache WHITE, Defendant Below, Appellant.**

**No. 34219.**

Supreme Court of Appeals of West Virginia.

Submitted April 7, 2009.

Decided May 1, 2009.

PER CURIAM:

This is an appeal by Joseph Fritache White (hereinafter "Appellant") from a final order of the Circuit Court of Mineral County. The Appellant appeals convictions on three counts of second degree sexual assault and contends that the trial court erred in failing to grant his motion for a mistrial after the jury inadvertently received evidence indicating that the Appellant is a registered sex offender. He maintains that the trial court's limiting instruction directing the jurors to disregard such information was insufficient to prevent prejudice to his defense. Upon thorough review of the briefs, record, and applicable precedent, this Court affirms the Appellant's convictions.

### I. Factual and Procedural History

On January 4, 2007, the Appellant and R.C.[1] attended a party at the home of a joint acquaintance. At the conclusion of the party, the Appellant offered to drive R.C. home. According to R.C.'s testimony, she realized during the trip that the Appellant was not driving toward her home, and she requested that he take her directly home. When he refused, she telephoned her fiancé, J.B., and attempted to have a conversation with him regarding the Appellant's behavior. R.C. alleges that the Appellant then grabbed her cell phone and threw it in the back of the vehicle. When R.C. attempted to escape by jumping from the moving vehicle, the Appellant stopped the vehicle and dragged her into the back seat. She further alleges that the Appellant parked the vehicle in an isolated area and forced her to engage in intercourse and oral sex. R.C. explains that she and the Appellant engaged in a continuous struggle and that she threw the Appellant's eyeglasses out the window onto the ground. The Appellant denies R.C.'s allegations, contending that the sexual acts were consensual. There were no witnesses to the alleged attack.

A trial was conducted on September 25, 2007. During jury deliberations, the jury noticed a reference on the final page of

Timothy M. Sirk, Law Office of Timothy M. Sirk, Keyser, West Virginia, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, R. Christopher Smith, Assistant Attorneys General, Charleston, West Virginia, for the Appellee.

---

1. Due to the sensitive nature of the crimes involved in this case, this Court will utilize only the initials of the victim. *See State v. Wears*, 222 W.Va. 439, 441 n. 1, 665 S.E.2d 273, 275 n. 1 (2008) ("Consistent with this Court's practice in cases involving sensitive matters, only the initials of the victim will be used.").

R.C.'s statement to the fact that the Appellant was a registered sex offender. In R.C.'s statement, a police officer had asked her if she had realized that the Appellant was a registered sex offender, and she had responded in the negative. After learning that information, the jury sent a note to the trial judge asking: "[w]as it proper for the jury to have access to this information?" Subsequent to conferring with counsel, the trial judge responded with a written instruction that the jury should not consider that evidence. The trial judge also removed the final page of R.C.'s statement before returning the statement to the jury. The Appellant moved for a mistrial based upon the inadvertent presentation of that evidence to the jury, and that motion was denied. Instead, the trial court provided the jury with a limiting instruction informing it to disregard that information about the Appellant. The jury subsequently convicted the Appellant, and he was sentenced to ten to twenty-five years on each of three counts, to run consecutively.

On appeal to this Court, the Appellant contends that evidence regarding his status as a registered sex offender was inadvertently admitted and that a mistrial should have been granted.[2] He maintains that neither the prosecutor nor Appellant's counsel had noticed that reference within R.C.'s statement. It had consequently been admitted into evidence without objection.

## II. Standard of Review

■ In *State v. Lowery*, 222 W.Va. 284, 664 S.E.2d 169 (2008), this Court explained that "[t]he decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." 222 W.Va. at 288, 664 S.E.2d at 173. Similarly, in *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983), this Court explained as follows:

The decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy.

172 W.Va. at 304, 305 S.E.2d at 260 (citations omitted).[3]

With these standards of review as guidance, this Court addresses the arguments presented by the parties.

### III. Discussion

#### A. State's Claim of Waiver

■ Prior to addressing the merits of the Appellant's substantive contentions, preliminary issues of waiver raised by the State must be resolved. The State contends that the Appellant waived his right to challenge the issue of improper admission of evidence and the trial court's failure to grant a mistrial in two distinct manners. First, the State maintains that the Appellant waived the alleged errors by failing to object to the admission of the victim statement containing the reference to the sex offender status. This Court has explained: "[T]o establish waiver there must be evidence demonstrating that a party has intentionally relinquished a known right." *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 315, 504 S.E.2d 135, 142 (1998). "When there has been a *knowing* and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be deter-

---

**2.** The Appellant's counsel explains that the inadvertent admission was likely caused by a clerical error. The reference to the Appellant's status as a registered sex offender was contained on the final page of R.C.'s statement, but the Appellant's counsel informs this Court that the copy of the statement included in his file did not include a final page. Thus, Appellant's counsel avers that he had no opportunity to review the page which contained the reference. He further contends

that he would have objected if he had seen that information.

**3.** West Virginia Code § 62-3-7 (1923) (Repl.Vol. 2005) provides that "in any criminal case the court may discharge the jury, when it appears that they cannot agree in a verdict, or that there is manifest necessity for such discharge."

mined." Syl. Pt. 8, in part, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995) (emphasis supplied).

In the circumstances of the present case, this Court concludes that the Appellant's counsel's failure to object to the introduction of R.C.'s statement cannot be characterized as a *knowing* and intentional waiver. The Appellant's counsel contends that he was unaware of the existence of the final page upon which the reference was contained. In his brief to this Court, Appellant's counsel theorized that the inadvertent admission was likely caused by a clerical error and contends that the copy of the victim statement in Appellant's counsel's file did not include a final page. For purposes of this discussion and based upon the record before this Court, we accept the declaration of Appellant's counsel regarding his lack of knowledge of the existence of the reference to Appellant's status as a sex offender. Assuming such veracity of Appellant's counsel, we must acknowledge that one cannot knowingly and intentionally waive something of which one has no knowledge. As Justice Miller astutely articulated in his dissent in *State v. Layton,* 189 W.Va. 470, 432 S.E.2d 740 (1993), with regard to waiver of a right to be present at trial, "the defendant could not waive what he did not know had occurred." 189 W.Va. at 500, 432 S.E.2d at 770 (Miller, J., dissenting).

■ Second, the State contends that the issue of denial of a mistrial was not properly presented for appellate review in the Appellant's brief. The State emphasizes inconsistency between the Assignments of Error identified in the Appellant's Petition for Appeal and those included in the Appellant's Brief to this Court. Specifically, in his Petition for Appeal, the Appellant raised the issue of whether the evidence regarding the Appellant's status as a sex offender was inadmissible as a matter of law and whether the trial court had erred in refusing to declare a mistrial. In his brief, however, the Appellant raised only the issue that evidence of the sex offender registry was inadvertently admitted, that it was improperly admitted, and that it was more prejudicial than probative.

The State attempts to characterize that inconsistency as a waiver of the Appellant's right to appeal the issue of denial of a mistrial, citing this Court's holdings that failure to properly raise an issue on appeal will result in waiver. *See Britner v. Medical Sec. Card, Inc.,* 200 W.Va. 352, 354 n. 5, 489 S.E.2d 734, 736 n. 5 (1997) ("The defendants' petition for appeal cited as error the circuit court's application of the five year statute of limitations to this case. However, the defendants did not address that issue in their brief and therefore have abandoned that assignment of error"); *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

Indeed, the Appellant did not specifically articulate the mistrial denial as a numbered assignment of error in his brief. However, a close reading of the Appellant's petition and brief reveals that the issue of mistrial denial was initially discussed in the petition, and the brief was thereafter dedicated to the argument that the mistrial denial was improper since there had been an inadvertent admission of prejudicial evidence. We consequently decline to find that the Appellant waived the issue of the denial of the mistrial for appellate review.

### B. Denial of Mistrial

The Appellant's substantive contention is that the lower court should have granted a mistrial when evidence concerning the Appellant's status as a registered sex offender was inadvertently presented to the jury. The Appellant contends that such evidence could not have been properly admitted as Rule 404(b) evidence,[4] was extremely prejudicial,

---

**4.** Rule 404(b) of the West Virginia Rules of Evidence provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the

and could only have been interpreted by the jury as evidence of a general propensity to commit crimes of a sexual nature. In response, the State concedes that the evidence in question would not have been admissible for any purpose under the West Virginia Rules of Evidence. However, the State maintains that the inadvertent admission was harmless since the cumulative effect of other substantial evidence was sufficient to warrant the jury's determination of guilt on the crimes charged.

■ In *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), this Court identified factors to be considered upon review of a verdict in which evidence was improperly included for jury consideration. Syllabus point two of *Atkins* directs as follows:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

This Court also succinctly explained in *Atkins* that "where a nonconstitutional error has been asserted, we have adopted the rather general rule that the case will not be reversed unless the error is prejudicial to the defendant." 163 W.Va. at 510, 261 S.E.2d at 60 (citations omitted); *see also State v. Potter*, 197 W.Va. 734, 748, 478 S.E.2d 742, 756 (1996) ("Our cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict."). *Accord State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998); *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996); *State v. Young*, 185 W.Va. 327, 406 S.E.2d 758 (1991); *State v. Ferrell*, 184 W.Va. 123, 399 S.E.2d 834 (1990), *cert denied*, 501 U.S. 1207, 111 S.Ct. 2801, 115 L.Ed.2d 974.

Based upon the protocol enunciated in *Atkins*, this Court is required to determine, after removing the inadmissible evidence of sex offender registration, whether the remaining evidence was sufficient to convince impartial minds of the Appellant's guilt beyond a reasonable doubt. If such evidence is determined to be sufficient, the potential prejudicial effect upon the jury must be analyzed.

■ In the present case, a review of the record reveals that the evidence against the Appellant was substantial and virtually unassailable. The State's extensive presentation of witnesses included J.B., the victim's fiancé. J.B., employed as a truck driver, testified that he had received a telephone call from the victim informing him that the Appellant was refusing to drive her home. J.B. explained that during a second call, one-half hour to forty-five minutes later, the victim had pretended to be speaking with her mother in order to contact J.B. to request aid. J.B. testified that the victim had been very distressed during these telephone calls and that he thereafter telephoned the police to alert them of the abduction of the victim.

Corporal Harry Myers, Sgt. John Droppleman, and Cpl. Christopher Siler testified regarding the police investigation of the incident. Cpl. Myers, having received J.B.'s telephone call, testified that subsequent inspection of the Appellant's automobile had detected blood on the seats. Sgt. Droppleman testified that he had interviewed the victim and that although he had noticed the odor of alcohol, the victim was coherent during the interview. Sgt. Droppleman explained that he had observed the victim's injuries and that she had provided details of the sexual attack, specifying a particular

accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-

trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

house on the road where the assault occurred. Sgt. Droppleman also transported the victim to the hospital and took her victim statement. During Sgt. Droppleman's testimony, the State moved the victim statement into evidence, with no objection by the defense. Photographs were also introduced, depicting the marks on the victim's neck, knee, shin, and ankle from jumping from the car and being dragged back to the car. Both Sgt. Droppleman and Cpl. Siler testified that the Appellant's eyeglasses had been located at the scene of the assault and that the victim's fingerprints were on the glasses.

The State also introduced the medical testimony of Marie DelSignore, a registered nurse at the Potomac Valley Hospital. Mrs. DelSignore explained the victim's emergency room records and testified that the vaginal examination, DNA samples, and rape kit had yielded results indicating that the Appellant and victim had engaged in sexual intercourse. Mrs. DelSignore testified that the victim had informed her of the rape and the accompanying physical injuries.

The State further introduced the testimony of Robyn Rogers, a fingerprint examiner with the West Virginia State Police Forensic Lab, regarding the victim's fingerprints on eyeglasses belonging to the Appellant. Howard Myers, a DNA analyst with the West Virginia State Police, also testified regarding the rape kit results.

The victim testified regarding her acquaintance with the Appellant, explaining that she had never been alone with him until the day of the alleged attack. She testified that she had been drinking alcohol with friends and that the Appellant had offered her a ride home. She thereafter provided the jury with the details of the alleged attack and her attempts to escape from the Appellant.

The defense presented the testimony of the Appellant. He explained that he and the victim had been sexually intimate on other occasions and that she had also been intimate with another man while attending the party on the night of the alleged attack. He further explained that although he and the victim did have intercourse on the night in question, it was consensual. The Appellant explained the victim's injuries by stating that she fell while walking near the vehicle.

██ Upon thorough review of the extensive evidence submitted in his case, we find that such evidence was sufficient to convince impartial minds of the Appellant's guilt beyond a reasonable doubt.[5] As detailed above, the State presented the testimony of the victim, medical testimony, DNA testing, fingerprint analysis, testimony regarding the criminal investigation, and testimony regarding the victim's impassioned pleas for assistance as she was being abducted.

██ Having determined that the evidence of guilt was sufficient to sustain the Appellant's conviction, we must proceed to the issue of whether the Appellant was prejudiced by the introduction of the evidence of the Appellant's status as a sex offender. As the *Atkins* Court identified, "[t]he second step of the harmless error test is to analyze the impact of the error on the jury verdict." 163 W.Va. at 514, 261 S.E.2d at 62. In *Atkins*, the trial court had erroneously admitted evidence related to prior convictions for contributing to the delinquency of a minor and manslaughter. The *Atkins* Court recognized that "[w]hile our cases state the test as whether the error had a prejudicial impact on the jury, the difficulty is in applying the test." *Id.* An appellate review of the prejudice possibly occasioned by the introduction of improper evidence must be "guided by whether the record reveals that the error was repeated or singled out for special emphasis in the State's argument," and the

5. This Court has consistently applied the standard set forth in syllabus point one of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), to determine sufficiency of evidence to sustain a verdict of guilt. That syllabus point provides as follows:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

"overall quality of the State's proof" is also significant in the determination. *Id.* at 514–15, 261 S.E.2d at 62. The *Atkins* Court, explaining that improper evidence is more likely to be deemed prejudicial if it is directly related to critical testimony of the defendant, ultimately held that the factors present in that case did not warrant a finding of prejudice.

> The prior convictions were not only stale, but were admitted under a limiting instruction by the court that they could not be considered with respect to the issue of guilt. There was no attempt by the prosecutor to place special or repeated emphasis on the issue. No mention of it was made in the opening statements, and while the closing arguments were not included in the record, defendant does not assert that the State used this issue in its closing argument.

*Id.* at 515, 261 S.E.2d at 63.

The issue regarding an unexpected revelation was also confronted in *State v. Gwinn,* 169 W.Va. 456, 288 S.E.2d 533 (1982), wherein a witness presented an unresponsive statement during testimony. In concluding that the trial court had not erred in denying a mistrial, this Court stated as follows at syllabus point five of *Gwinn:* " 'Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error.' Syllabus Point 7, *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975); Syllabus Point 18, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966)." [6] This Court astutely recognized in *Gwinn* that "[t]here are extraordinary situations where the objectionable evidence is so prejudicial that an instruction to the jury to disregard it is ineffective,

and a mistrial is an appropriate remedy." 169 W.Va. at 471, 288 S.E.2d at 542. The statement in *Gwinn,* however, was not deemed to rise to that level of prejudice.

Similarly, in *State v. Cabalceta,* 174 W.Va. 240, 324 S.E.2d 383 (1984), this Court concluded that the trial court had properly denied the defendant's motion for a mistrial despite the inadvertent introduction of collateral crime evidence by a State witness. This court explained that "our review of the entire record convinces us that there was no prejudice to the appellant resulting from the single reference to marihuana being discovered in her suitcase. . . ." 174 W.Va. at 245–46, 324 S.E.2d at 389.

In *State v. Bennett,* 179 W.Va. 464, 370 S.E.2d 120 (1988), this Court addressed incidental testimony, in the form of an unresponsive answer by a police officer, regarding the defendant's prior police interrogation constituted inadmissible evidence of collateral crimes. This Court held that the admission was harmless given the strength of the other evidence presented by the State and observed as follows: "Assuming for purposes of discussion that the witness's testimony was inadmissible evidence of a collateral crime, we are far from being convinced that the evidence was prejudicial, given the overall strength of the State's case." 179 W.Va. at 472, 370 S.E.2d at 128.

In the case sub judice, the jury inadvertently learned that the Appellant was a registered sex offender. While the revelation is indeed inflammatory, this Court finds it highly improbable that the fact of the Appellant's status as a registered sex offender swayed the jury,[7] in light of the other substantial and overwhelming direct evidence against the Appellant. The State had presented testimony and physical evidence indicating that R.C.

---

6. However, with regard to the potential for limited effectiveness of a curative instruction, this Court quoted Judge Learned Hand as follows in *State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999): "Judge Learned Hand once said that an instruction to the jury to ignore an objectionable piece of testimony is the 'recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else.' *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.1932)." 206 W.Va. at 425, 525 S.E.2d at 306.

7. Although the Appellant emphasizes the proximity in time between the jury's question to the judge regarding the sex offender status and the ultimate verdict, a review of the record indicates that the jury asked the question at 1:50 p.m. and did not render a decision of guilt until 3:45 p.m. The jury deliberations had begun at 10:55 a.m., and the jury had gone to lunch at approximately 12:05 p.m. Thus, the verdict was not immediately rendered subsequent to the jury's realization of the Appellant's status as a sex offender.

had been sexually abused by the Appellant and had aggressively attempted to escape from the Appellant. The Appellant had countered these allegations merely with claims that the sexual activity had been consensual. Further, the trial judge reduced the potential for prejudice by specifically instructing the jury to disregard the evidence and by physically removing the evidence from the jury. *See Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." (citations and quotations omitted)).

Based upon the foregoing, this Court cannot conclude that the revelation had a prejudicial impact upon the ultimate outcome of the trial, and we find that the error of inadvertent admission of this evidence was harmless. Consequently, the trial court did not abuse its discretion by refusing to grant a mistrial, and its judgment is affirmed.

Affirmed.