GREGORY, Circuit Judge,
dissenting:
The majority opinion comes to the unfortunate conclusion that contracts simply do not mean what they say. In reviewing this motion to dismiss, we must accept the facts in the complaint as true, and draw all reasonable inferences in favor of the Beasleys. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1987, 1949-50, 173 L.Ed.2d 868 (2009). While we need not accept as true any legal conclusions, id., in a contract dispute, we must construe any ambiguous provisions in the Agreement against Arca-pita as the drafter. Department of Community Health v. Pruitt Corp., 295 Ga. App. 629, 678 S.E.2d 36, 39 (2009). Most importantly in this case, even if we may foresee the claim’s later failure at the summary judgment stage, we must refrain from examining its underlying merits. Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.1992).
As drafted by Arcapita, the plain language of the Agreement makes clear that Ms. Beasley’s signature alone was sufficient to in fact make her “individually” a party to the Agreement. J.A. 43. Section 25 states in part that:
In the event Franchisee named herein is a corporation at the time of the execution of this Agreement, it is warranted, covenanted and represented to Franchisor that:
25.02 The above-named person or persons[,] [Ms. Beasley,] has (have) individually, and jointly and severally, executed this Agreement, and such person, or one of such persons, [Ms. Beasley,] is and shall be the chief executive officer of the Franchisee corporation^] [Ventures] ....
J.A. 43 (emphasis added). Section 25 only applies when the franchisee is a corporation because it creates another layer of liability for the individual signatory, which would otherwise be unnecessary in circumstances where the lone franchisee is an individual person. Section 25.02 is a guarantee that the person “above-named” — Ms. Beasley’s name appears without title several times in the preceding parts of the Agreement, J.A. 41-42 — will execute the Agreement as an individual, and as the *268 chief executive of the corporation. It therefore establishes obligations under the Agreement for both the signatory as an individual and as a representative of the corporation.
Thus, through her single signature, Ms. Beasley bound herself as an individual and her corporation, Ventures, to the Agreement. J.A. 44; see also Restatement (Second) of Contracts § 289(1) (1981) (“Where two or more parties to a contract promise the same performance to the same promis-ee, each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several.”). Ms. Beasley therefore had the same specific rights and duties under the Agreement as Ventures, rights which were enforceable under § 1981. See Domino’s Pizza, Inc. v. McDonald, 546 U.S. 470, 476-80, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006) (“Section 1981 offers relief when racial discrimination ... impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.”). Indeed, at oral argument, no one seemed to doubt that if Ms. Beasley had in some way failed to perform under the Agreement, Arcapita could use section 25.02 to hold both her and Ventures liable.
Nonetheless, the majority holds that this language did not make Ms. Beasley a party to the Agreement because “factually, [she] did not individually execute the agreement.” See Op. at 266. The majority believes that Ms. Beasley had to either sign the Agreement twice, once as an individual and again as the President of Ventures, or somehow otherwise note that she was also signing the Agreement in her individual capacity. See Op. at 266-67 n. I. And yet, the terms of the Agreement did not necessitate two signatures, and, given that Arcapita clearly included section 25.02 as a means of securing Ms. Beasley’s individual liability, any further notation would have been superfluous.* Again, that section states that Ms. Beasley — who is the actual signatory, and is repeatedly “above-named” without title, J.A. 41-42 — has “individually” executed the Agreement.
In fact, the Georgia law cited by the majority provides still more interpretive presumptions in favor of Ms. Beasley’s claim. Dewberry Painting Centers, Inc. v. Duron Inc. supports my position in so far as it holds that the act of signing above the title “President” will not, as a matter of law, preclude personal liability. 235 Ga. App. 40, 508 S.E.2d 438, 440-41 (Ga.App. 1998). Similarly, my colleagues mistakenly rely on Ga.Code Ann. § ll-3^402(b), which applies only where a contract is “unambiguous.” The Agreement is, at best, ambiguous, and thus we should instead apply Ga.Code Ann. § 11 — 3— 402(b)(2), which instructs us to presume that the corporate representative is individually liable on the instrument.
Mr. Beasley similarly became a party to the contract through his repeated initialing *269 of the Agreement as a “franchisee.” See J.A. 41, 42. Further, since the Beasleys also functioned as sureties through the Guarantee of Franchise Agreement, they likely have an alternative ground to claim § 1981 standing. See, e.g., RBA Capital, LP. v. Anonick, No. 3:08cv494, 2009 WL 960090, at *2 (E.D.Va. April 8, 2009) (noting that “conceptually” a contract surety could bring a lawsuit on behalf of the principal (citing Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1317 (4th Cir.1994))); see also Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 436 (4th Cir.2006) (permitting third-party beneficiaries to bring § 1981 actions).
The Beasleys sought to pursue their American dream of owning and operating a business franchise. However, according to the allegations in the complaint, the disci'iminatory actions of Areapita kept their franchise from ever growing beyond its infancy. Given the clarity of section 25.02 and the deference we must give to the complaint at this early juncture, I am convinced that the Beasleys factually were parties to the Agreement. They are therefore entitled to the opportunity to vindicate them rights under § 1981 in the district court.
Regrettably, however, the majority’s decision will bar any court from ever reaching the merits of the Beasleys’ racial discrimination claim. While the lawsuit may ultimately prove to be unsuccessful, at present, there is no just basis for this Court to hold that the Beasleys lack standing. For these reasons, I cannot join the “factual” analysis of the majority, and must dissent.

 The suggestion that an amendment was somehow needed in order for Ms. Beasley to obtain standing under the Agreement is absurd. Section 25.02 clearly means that there was no manner in which Ms. Beasley could have signed the Agreement that would have prevented her from being held individually liable. Ms. Beasley’s mere execution of the Agreement was her representation to Arcapita that she would be held individually liable, and that she was able to bind Ventures as its chief executive officer. The presence of a title beneath her signature was therefore unnecessary and redundant. Thus, the Agreement would need to have been amended so as to preclude her individual liability, not to create it, and Ms. Beasley probably would have welcomed such an amendment.
And yet, Arcapita likely required her to execute the unmodified Agreement as a precondition to obtaining a franchise; thereby making it impractical or impossible for her to have insisted on any amendments.