**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **K.S., B.M., and O.S.**

**No. 22-876** (Monongalia County 19-JA-31, 19-JA-32, and 19-JA-33)

**MEMORANDUM DECISION**

Petitioner Mother S.S.[1] appeals the Circuit Court of Monongalia County's October 31, 2022, order terminating her parental rights to K.S., B.M., and O.S.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The proceedings giving rise to this appeal were previously before the Court. *In re K.S.*, 246 W. Va. 517, 874 S.E.2d 319 (2022). As a result of a positive drug screen in a family court matter, the DHS filed an abuse and neglect petition against petitioner in February 2019, and petitioner stipulated to her adjudication the following month. *Id*. at 522, 874 S.E.2d at 324. Over the following fourteen months, petitioner tested positive for drugs on some occasions but also underwent substance abuse treatment and produced many negative screens over long periods. *Id*. Following a dispositional hearing in October 2020, the circuit court terminated petitioner's parental rights to the children. *Id*. at 523-24, 874 S.E.2d at 325-26. Petitioner appealed, and we vacated the circuit court's dispositional order for several reasons, including the DHS's failure to present evidence in support of termination and deficiencies in the court's dispositional order. *Id*. at 528-29, 874 S.E.2d at 330-31.

---

[1]Petitioner appears by counsel Cheryl L. Warman. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Stephanie Nethken appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

On remand, the court granted petitioner a post-dispositional improvement period following a hearing in July 2022. Petitioner was required to submit to random drug screening as a condition of this improvement period. The parties appeared for a dispositional hearing in September 2022. At the outset, petitioner objected to the DHS calling as a witness Dr. Kenneth Lewis, director of OpAns Laboratory, which was the facility that conducted the tests of petitioner's blood. Specifically, petitioner indicated that this witness was not timely disclosed and that she was not provided a copy of his curriculum vitae, among other issues. Due to time constraints, the court ruled that it would permit Dr. Lewis to testify, but would ensure the appropriate information was disclosed to petitioner and would permit her to "either call[] an expert in response or . . . make [Dr. Lewis] available for cross[-]examination again, if you need additional time to do so at the next hearing."

The court then proceeded to hear testimony from Justin Kreger, director of the Monongalia County Day Report Center where petitioner participated in drug screens. According to Mr. Kreger, petitioner tested positive for THC and methamphetamine on several dates between July and September 2022. It is important to note that petitioner did not object to any of Mr. Kreger's testimony. Dr. Lewis then testified and corroborated Mr. Kreger's testimony concerning petitioner's continued abuse of THC and methamphetamine. The matter was then continued until approximately two weeks later, at which time counsel for the DHS confirmed that petitioner was provided a copy of Dr. Lewis's curriculum vitae and resume. During this hearing, the DHS indicated that "other than continued positive[ drug screens] there hasn't been a significant change in [petitioner's] circumstances" since the prior hearing. According to the record, petitioner tested positive for THC and methamphetamine the day after the prior hearing.

The parties then appeared for a final dispositional hearing in October 2022, at which time petitioner continued her cross-examination of Dr. Lewis. The DHS also presented testimony from a Child Protective Services worker who indicated that, although the DHS initially supported an improvement period, the DHS sought termination of petitioner's parental rights "after we realized that she was, in fact, using methamphetamines, was not wanting any additional services, [and] was not wanting to admit to substance use." The witness also explained that termination of petitioner's parental rights was necessary for the children because they "have not had any kind of meaningful contact with [petitioner] in pretty much over two years." The witness explained that the children's caregivers requested that petitioner not have contact with the children "based on her history of drug use and inconsistent participation in the children's lives." After hearing testimony from additional witnesses, including petitioner, the court found that petitioner refused to accept that she needed to correct her substance abuse. Based on petitioner's continued positive drug screens, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Further, noting that "[t]he stability of the children has to be [the] primary focus," the court concluded that termination was necessary for the children's welfare. The court also considered the wishes of then-thirteen-year-old K.S., who explained the impact of petitioner's behavior, asked that petitioner not retain her parental rights or otherwise communicate with her, and expressed a desire to be adopted by her stepmother.

Accordingly, the court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that she was denied a meaningful dispositional hearing because of the DHS's late disclosure of Dr. Lewis as a witness and the introduction of his testimony "regarding results of dried blood spot analysis samples" that "purportedly showed the presence of illicit drugs." Further compounding this issue, petitioner asserts that the DHS did not attempt to qualify Dr. Lewis as an expert. We find, however, that it is unnecessary to address this assignment of error because petitioner cannot establish prejudice, assuming any error occurred. Indeed, it is confusing that petitioner challenges this witness's testimony to petitioner's drug screen results, when petitioner raised no objection to Mr. Kreger's testimony on this same issue. The record reflects that Mr. Kreger testified before Dr. Lewis and discussed, at length, petitioner's many failed drug screens. As such, petitioner cannot establish any prejudice in Dr. Lewis testifying to the same evidence. "'This Court . . . succinctly explained . . . that "where a nonconstitutional error has been asserted, we have adopted the rather general rule that the case will not be reversed unless the error is prejudicial to the defendant."' *State v. White*, 223 W. Va. 527, 532, 678 S.E.2d 33, 38 (2009) (citation omitted)." *State v. Rexrode*, 243 W. Va. 302, 317 n.22, 844 S.E.2d 73, 88 n.22 (2020). Accordingly, we find that petitioner is entitled to no relief.

Finally, petitioner argues that it was error to terminate her parental rights because it was not the least restrictive dispositional alternative. According to petitioner, her rights could have been left intact because two children were placed with their fathers and the third was already placed with a legal guardian. However, petitioner ignores the following:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristen Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court correctly found that petitioner's continued substance abuse constituted a circumstance in which there was no reasonable likelihood that the conditions could be corrected. *See* W. Va. Code § 49-4-604(d)(1). This is in stark contrast to the cases upon which petitioner relies in support of her argument, including *In re B.S.*, 242 W. Va. 123, 829 S.E.2d 754 (2019). In that case, we affirmed the termination of a mother's custodial rights only because the record demonstrated compliance with services over an extended period, including producing many clean drug screens. *Id*. at 130, 242

---

[3]K.S. and O.S. were returned to the custody of their nonabusing fathers. B.M.'s father was granted disposition under West Virginia Code § 49-4-604(c)(5), and the permanency plan for that child is legal guardianship in the current placement.

S.E.2d at 761. Unlike in that matter, petitioner initially showed some compliance, but, following remand, she continued abusing drugs up to the final dispositional hearing in this matter.

Further, the court concluded that termination of petitioner's rights was necessary for the children's welfare, taking into account K.S.'s desire to be adopted by her stepmother and the overall need for stability and security for all three children. On appeal, petitioner argues that she should have been entitled to disposition under West Virginia Code § 49-4-604(c)(5). We find, however, that although such a disposition is appropriate in some cases, the circuit court in this matter was not required to impose the same when the evidence overwhelmingly supported the findings necessary for termination of petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and/or neglect can be substantially corrected in the near future and when necessary for child's welfare). Petitioner's reliance on *In re Z.B.*, No. 17-0203, 2017 WL 2628570 (W. Va. June 19, 2017)(memorandum decision), in which this Court affirmed a disposition under West Virginia Code § 49-4-604(c)(5) is misplaced. While petitioner accurately represents this Court's discussion of the definition of permanent placement as set forth in Rule 3(n) of the Rules of Procedure for Child Abuse and Neglect Proceedings, she ignores the fact that disposition was upheld in that case, in critical part, because the circuit court in that matter did *not* make a finding that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. *Id*. at *3. This precluded termination of parental rights, unlike in the current matter where the court made the necessary findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 31, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn